# Shelton *v*. Hacelip.

## *Malpractice.*

(Decided Feb. 26, 1910. 51 South. 937.)

1. *Physicians and Surgeons; Degree of Skill Required.*—The reasonable and ordinary care, skill and diligence required of physicians and surgeons is such as physicians and surgeons in the same general neighborhood and in the same general line of practice ordinarily have and exercise in like cases.

2. *Same; Malpractice; Burden of Proof.*—There is no presumption of negligence or want of proof arising from the failure to cure, and in an action against a physician for malpractice, the burden is on the plaintiff to show that defendant's care, skill and diligence in the case was not that required of physicians and surgeons under like circumstances.

3. *Same; Evidence.*—The evidence in this case stated and examined and held not to show that the medicine used in the eye and prescribed by the defendant contained carbolic acid which destroyed the eye.

APPEAL from Morgan Law and Equity Court.
Heard before Hon. C. C. NESMITH.

[Shelton v. Hacelip.]

Action by Velma Hacelip by her next friend against Dr. J. B. Shelton. Judgment for plaintiff and defendant appeals. Reversed and remanded.

LOWE & TIDWELL, and E. W. GODBEY, for appellant.— The testimony of an examining physicion is of higher dignity than mere opinion evidence.—*Bennett v. Fail,* 26 Ala. 603. A physician is not liable in damages for an error in judgment.—*Barker v. Lane,* 49 Atl. 963; *Staloch v. Holm,* 111 N. W. 295; *Tefft v. Wilcox,* 6 Kan. 43; *Tenny's Case,* 123 Ala. 527. Under these authorities, and on the authority of *Erwin v. Goode,* 78 Fed. 444, the appellant was entitled to the affirmative charge.

CALLAHAN & HARRIS, for appellee.—Counsel discuss the evidence and the assignments of error, but without citation of authority.

McCLELLAN, J.—In *McDonald v. Harris,* 131 Ala. 359, 368, 31 South. 548, 550, the legal measure of care, skill and diligence of physicians and surgeons is thus defined: "The reasonable and ordinary care, skill, and diligence which the law requires of physicians and surgeons is such as physicians and surgeons in the same general neighborhood, in the same general line of practice, ordinarily have and exercise in a like case." This statement was appropriated from 14 Am. & Eng. Law, pp. 76, 78. The like doctrine is announced in 30 Cyc. p. 1575. It is for the breach of this duty that the present action was instituted practically four years after the wrong complained of was alleged to have been inflicted. The damnifying result is averred to have been the loss of the eye of the then 11 months old child, Velma Hacelip.

The only assignments of error insisted on is that with reference to the admission of testimony as to defendant's (appellant's) custom in respect of himself filling prescriptions in Dr. Hughes' pharmacy, and those predicated upon the refusal of the requested affirmative charge for the defendant, and, upon the overruling of a motion for a new trial, both upon the effect of the evidence.

These facts are undisputed upon the record before us: That Velma had been affected with chickenpox and nausea, and the right eye (the one destroyed) was inflamed, ulcerated in the external corner, had scabs on it, and was infected with pus and "septic poison." That defendant was called professionally to see her, mainly, it appears, for the eruption and nausea. That he examined the right eye, and stated that he would give a prescription for its treatment, and at the same time instructed the parent to keep the organ cleaned with the frequent application of warm boiled water. That what was received as this prescription was used by dropping three or four drops, from a teaspoon, into the eye after lifting the eyelid. That this application was made in the afternoon about 2 o'clock. That the child at once gave evidence of being in great pain in that eye, and, with its hands, rubbed off the scabs, and introduced the poisoning pus into the eye. That the sight of the eye was destroyed when examined on the succeeding morning, the destruction being accomplished by the thickening of the tissue over the sight of the eye.

The evident theory of the plaintiff (appellee) was on the trial that the liquid introduced into the eye contained carbolic acid, and that the destruction of the sight resulted from that. It is obvious that, if the loss of sight was due to disease, the defendant did not breach his duty, unless in the treatment thereof he failed to

measure up to the standard stated before; and it is equally as obvious that the plaintiff's theory excludes any other means or omission leading to that breach of duty in the premises except that rested on the use of carbolic acid (a matter disputed in the proof) in the prescription written by the defendant in the treatment of the eye.  Dr. Hughes and defendant both testified that the prescription written by defendant was prepared by Hughes, and not by defendant, and that in it there was no ingredient of carbolic acid.  Dr. Murray testified that the eye nor lid nor face gave any evidence of having been burned with carbolic acid, and that in his opinion the loss of sight was due to the disease. There are some tendencies in the evidence to the effect that the preparation contained carbolic acid, the chief of which were afforded by the testimony of two witnesses that the contents of the bottle bore an odor of carbolic acid, and that the sediment in the bottom of the bottle was similar to that made by an excess  over a solution of carbolic acid.

The burden of proof in cases of this character is on the plaintiff to show that the defendant's care, skill, or diligence in the given case was not that required, as stated, of physicians and surgeons; and it should be added that there is no presumption of negligence or want of skill arising from the failure to cure.—30 Cyc. p. 1584, and authorities in notes.  It is evident from this record that the controlling issue was whether the preparation applied to the eye was that prescribed by the defendant.  As indicated, there was some evidence tending to show that the preparation was that prescribed by the defendant, and that it contained carbolic acid. It consisted of the testimony of Mrs. Daniel that the defendant brought the bottle to the house where the child was, and that out of this bottle the liquid was put

into the eye. It must be conceded that there was a conflict in respect of the issue stated. In the light of all of the evidence, however, the opinion is entertained that the weight of the evidence and the probabilities of the truth of that tending to fix liability upon the defendant are so strongly against the verdict as to carry conviction that it is wrong and unjust.

In the first place, the long period of time elapsing between the injury and the institution of the action, in connection with the undisputed fact that defendant was subsequently often called professionally to treat members of Mrs. Daniel's family, are circumstances impossible to be ignored in determining the weight to be given Mrs. Daniel's, the next friend's, testimony. In the second place, Dr. Sullivan's testimony may be taken at the limit of its probative value, and yet, when boiled down, it amounts to nothing more than that the injury "might"—a term, as employed, no stronger than possibly—have been produced by carbolic acid, or "might" (i. e., possibly) have resulted from a virulent form of conjunctivitus, a disease of the membrane of the eyeball. There was for the plaintiff no evidence that the eyeball or its membranes were burned by a caustic; carbolic acid being of that class of chemicals. On the contrary, the proof is conclusive that carbolic acid, when applied to the human anatomy—its component membranes—deadens, and the inevitable effect is to produce a sloughing of the cauterized part. There is a total absence of proof that any sloughing occurred. As we view the evidence here, it is impossible to cauterize a membrane with carbolic acid, and affect only to change its color. It is incredible on this evidence that the iris could be altered in color from brown to white by the application of carbolic acid, and at the same time avoid sloughing of the cauterized membrane.

[Shelton v. Hacelip.]

Directly opposed to the plaintiff's theory of fact there is the testimony of Hughes and defendant and that of Dr. Murray, and the original prescription defendant contends was supplied by him. The two first mentioned say that there was no carbolic acid in the preparation, and that the prescription was filled by Hughes, and not by the defendant. The original prescription is before us. Carbolic acid is not one of its named elements. Dr. Murray saw the eye the next day, and he is positive that there was no evidence of cauterization about the eye or face. So far as appears, he is without interest in the premises. He was called by Mrs. Daniel. Support for the plaintiff's insistence must come from the odor and the sediment. Two witnesses say there was an odor of carbolic acid, and one that there was a cloudy sediment in the bottle. The inevitable effect of carbolic acid on membranes and the positive statement of Dr. Murray that there was no cauterization, and that there was no sloughing and the testimony of Hughes and defendant, all in connection with the long lapse of time between the injury and the commencement of the action and the continuance of defendant in the professional service of the household, compel the conclusion that carbolic acid did not destroy the child's sight.

The court should have granted the new trial. Its refusal was error, and on that account the judgment must be reversed.

There is no merit in the other assignments argued, as before stated, in brief for appellant. There was evidence, or reasonable inferences therefor, that forbade under our system the giving of the affirmative charge for defendant.

Reversed and remanded.

DOWDELL, C. J. and SIMPSON and MAYFIELD, JJ., concur.