[Watson v. Adams and Watson v. Franklin.]

# Watson *v.* Adams
## and
# Watson *v.* Franklin.

*Automobile Collision.*

(Decided January 22, 1914.   Rehearing withdrawn June 4, 1914.
65 South. 528.)

1. *Damages; Act In; Evidence.*—Where defendant's chauffeur was alleged to have negligently run down plaintiff, the admission on cross-examination of defendant of testimony tending to show that counsel appearing for defendant represented an indemnity insurance company, was error, as his liability was not affected by the fact that he was indemnified, nor did it affect his credibility.

2. *Appeal and Error; Harmless Error; Evidence.*—The admission in evidence of the fact that counsel appearing for defendant represented an indemnity insurance company was highly prejudicial.

3. *Same; Curing Error.*—In the delicate, important and difficult matter of removing the prejudicial effects of evidence improperly admitted, care and caution is to be exercised, the burden of which rests on the party causing its admission, no duty resting upon the other party in that connection after seasonably and properly reserving exceptions to its admissions.

4. *Same.*—The manner of exclusion examined and stated, and held to be too general and indefinite to cure the error in the admission of the testimony, especially in view of the fact that the attempted exclusion was made some time after the admission of the evidence.

5. *Same; Waiver.*—The insufficiency of an attempt to exclude erroneously admitted testimony was not waived by the excepting party's failure to deny its sufficiency, as the burden was upon the party causing the erroneous admission and the excepting party not being required to affirm or deny the sufficiency of the attempted exclusion.

6. *Evidence; Circumstantial; Weight; Sufficiency.*—Circumstantial evidence is accepted with caution.

7. *Charge of Court; Weight of Evidence.*—A charge asserting that defendant's plea of alibi if false, was a discrediting circumstance was erroneous, as the use of the term alibi, and the rule stated relative thereto is not appropriate in a civil action; the inducement to avert the imposition of damages not being the equivalent of the reason for making a false alibi in a criminal case a discrediting circumstance.

8. *Death; Action for; Nature.*—The action given by section 2486, Code 1907, is a civil and not a penal nor quasi criminal action, although the damages are punitive.

[Watson v. Adams and Watson v. Franklin.]

APPEAL from Jefferson Circuit Court.

Heard before Hon. E. C. CROWE.

Action by Fannie Allen Adams as administratrix, and by John T. Franklin, against T. J. Watson, the first being for the death of her intestate, and the other for personal injury, both actions growing out of the same transaction. There were separate judgments for plaintiffs upon a joint trial, and defendant takes an appeal in both cases, but which are considered together. Both judgments reversed and remanded.

R. H. THACH, J. T. STOKELEY and FRANK L. WARD, for appellant. Under the circumstances shown by the record this court has authority to reverse the lower court's action in refusing to set aside the verdict of the jury.—*Davis v. Miller,* 109 Ala. 589; *So. Ry. v. Lollar,* 135 Ala. 375. The court was in error in admitting testimony of the fact that attorneys representing an indemnity insurance company were appearing for the defendant, and this error was highly prejudicial, and was not cured by the subsequent action of counsel for plaintiff, and the court in attempting to exclude it.—*Iverson v. McDonald,* 78 Pac. 202; 94 S. W. 352; 65 N. E. 494; 110 Ill. App. 664; 80 Pac. 431; 81 Pac. 831; *Long v. K. C. M. & B.,* 54 South. 62; *Florence C. & I. Co. v. Field,* 104 Ala. 471; *B. R. L. & P. Co. v. Gonzales,* 61 South. 80; 38 Cyc. 1441. The court was in error relative to its charge on what it termed the alibi.

PERCY, BENDERS & BURR, and HOWARD & SINNOT, for appellee. The court will not disturb the action of the trial court in declining to set aside a verdict because contrary to the evidence unless it can say that the verdict is palpably wrong and unjust.—*Cobb v. Malone,* 92 Ala. 630; *Briel v. Exchange N. Bank,* 61 South. 277,

and many intermediate cases. There was no error in the court's action on the argument of counsel.—*Cross v. State,* 68 Ala. 476; *Couch v. State,* 60 South. 539; *Coleman v. Pepper,* 159 Ala. 314. Thirty days constitutes the time for applying for and getting rulings on new trials in the circuit court of Jefferson county.—Acts 1888-9, p. 801; *Agee & Co. v. Carter,* 60 South. 460. After that time has expired, the court has no power to consider new, distinct and separate grounds attempted to be added by way of amendment.—122 Pac. 266; 119 S. W. 1016; 87 N. W. 404; 49 S. W. 982; 82 N. E. 675. However this may be decided counsel invoke the doctrine laid down by the recent cases of *B. R. L. & P. Co. v. Gonzales, supra* and *B. R. L. & P. Co. v. Drennen,* 57 South. 879. It therefore appears that the admission of evidence and the remarks of counsel if erroneous was cured by the action of the court, and of the attorney for the plaintiff withdrawing the same from the jury.—*W. U. T. Co. v. Rowell,* 166 Ala. 651; *Florey v. Florey,* 24 Ala. 241; *Mobile Light, etc., Co. v. Walsh,* 146 Ala. 295; *Driver v. King,* 145 Ala. 585; *Jordan v. State,* 79 Ala. 9; *Dismukes v. State,* 83 Ala. 287; *Tapscott v. Gibson,* 129 Ala. 503; *Jackson v. State,* 94 Ala. 85; *Smith v. State,* 107 Ala. 139; *Green v. State,* 96 Ala. 29.

McCLELLAN, J.—These appeals, from a joint, single trial and separate judgments, for the plaintiffs, present identical matter for review, though each appeal, with its assignments, is properly brought up on a separate transcript. The appeals are therefore considered together.

Between 12 midnight and 1 a. m. of January 14, 1912, George B. Adams and John P. Franklin were struck by a rapidly moving automobile; Adams being killed and Franklin seriously injured. The place of the occurrence

[Watson v. Adams and Watson v. Franklin.]

was in Twelfth street, out several feet from the sidewalk, in the city of Birmingham. At and about the point where the collision took place, it appears that the street was an important and frequently, if not almost constantly, used (night and day) thoroughfare in that city. The complaints ascribed the injury of these men, in the first counts, to negligent operation of the automobile, and in the second, to wanton or willful misconduct. The pleas were the general issue. It is manifest from the evidence that every material issue made by the pleadings was for the jury's consideration and determination. This conclusion is not, as it could not well be, questioned on the record here.

The single, controlling question litigated by the parties was the identity—the ownership—of the automobile which killed Adams and injured Franklin. This issue was strenuously, and with every indication of diligence and of skill of able counsel, contested on the trial, and is projected here in earnest arguments upon the impropriety vel non of the court's action in overruling the motion for new trial, particularly on the ground assailing the verdict's justification in the evidence. The view prevailing here on questions other than that just mentioned renders it as unnecessary, as it is undesirable that an elaborate discussion of the evidence should be undertaken. However, it is both proper and necessary, in view of the considerations to be hereafter stated, that it be said that the conflicting evidence upon the issue of identity of the agency of injury, with the burden resting upon the plaintiff to establish, to the requisite decree, appellant's automobile as the guilty agent, makes this an instance typical of the wisdom and judicial necessity for calling upon 12 practical, sensible, impartial, oath-bound men, in the jury box, to justly resolve the issue, that justice may be the more certainly done. In

this instance, what is the truth depends, under this evidence, upon the weight and credibility the triers of the fact give to the testimony of many witnesses on each side of the issue line.

During the cross-examination of the defendant (appellant), the bill of exceptions recites (omitting seasonable objections and motion that raised the questions to be hereafter discussed):

"Thereupon the plaintiff's counsel asked the witness the following question: 'Do you know who did employ Mr. Ward to defend him; do you know who Mr. Ward is representing now in this case?' To which question the defendant's counsel objected. Thereupon plaintiff's counsel asked the witness the following question: 'Is he representing you; are you paying him to handle this case and get up the evidence?' Defendant's counsel objected to the question as calling for irrelevant, immaterial, and incompetent testimony, which objection the court overruled, remarking, 'He has a right to know who he represents,' and, to the action of the court in overruling said objection, the defendant then and there, in open court, duly separately and severally excepted. Answering, the witness testified: 'I suppose he is representing me; I am not paying Mr. Ward. I didn't employ him in the case.' Thereupon plaintiff's counsel asked the witness the following question: 'Who did employ him in this case?' * * * Answering the question, the witness testified: 'I don't know.' Thereupon the plaintiff's counsel asked the witness the following question: 'Don't you know that the Ætna Insurance Company does?' 'No, I do not.' Defendant's counsel after answer had been made objected to the question as calling for irrelevant, immaterial, and incompetent testimony. The court remarked: 'He says he don't know.' Thereupon plaintiff's counsel asked the witness the following question: 'Do you know who Mr. Stokeley is.

representing? The defendant objected to the question on the ground that the record shows who he is repre-senting. Thereupon the plaintiff's counsel asked the witness the following question: 'Are you employing Mr. Mr. Stokeley in the sense of paying his fee in this case?' * * * Thereupon plaintiff's attorney asked witness the following question: 'All right, Mr. Watson, do you know who he is representing in the case?' And the witness, answering, said: 'Do you mean am I paying him to represent me?' And plaintiff's attorney replied: 'No, sir; I am not paying him to represent me.' * * * Thereupon the plaintiff's counsel asked the witness the following question: 'Do you know whether or not he is representing the Ætna Insurance Company?' * * * In answer to said question the witness stated 'Do I know he is representing the Aetna Ins. Co.?' Thereupon, in reply, plaintiff's counsel asked the witness: 'Yes, sir.' Answering said question the witness testified: 'I suppose he is; I could not swear who he represents. I suppose he is employed by that concern to represent them. I am under the impression he is.' Witness was then asked: 'You don't know whether he is or not?' And replied: 'I would not swear to it.' "

The attorneys appearing as representing the defendant were Joseph T. Stokeley, Frank L. Ward, and Robert H. Thach. On redirect examination, the defendant testified that he employed Mr. Thach, and that Mr. Thach represented him (defendant), and that Messrs. Stokeley and Ward were attorneys of record representing the defendant.

Upon the conclusion of the introduction of evidence, the bill of exceptions recites these matters, including, with that under consideration, other matter important as bearing upon other questions to be later treated:

"Thereupon the following proceedings took place: Mr.

[Watson v. Adams and Watson v. Franklin.]

Burr stated: There are two or three exceptions that Mr. Stokeley took that I want to consent that that evidence be excluded so there cannot be any possible question about it. The first is the statement made by Mr. Daly in reference to a conversation which he had with Mr. Kinney. Your honor will remember that over his objection I was allowed to prove the statement that Kinney made in Shipman's presence, and I am willing for that to go out. The Court: Give me a statement of the effect. Mr. Burr: The effect of it was that Mr. Daly testified that Kinney identified this car in Shipman's presence. The Court: Gentlemen, don't consider that part of the testimony. Mr. Stokeley: He stated they were there at the same time, Kinney and Shipman. Mr. Burr: It is Daly's reference to the conversation that I am excluding. Mr. Stokeley: Your honor permitted him, over my objection, to testify to a conversation with a man named Kinney. The Court: All right, gentlemen, that is not before you. Mr. Burr: The testimony of Mr. Watson in reference that he supposed that Mr. Stokeley and Mr. Ward were representing an insurance company, I want that excluded, and what he said in reference to his employment of these gentlemen. The Court: That will not be before you for consideration. Mr. Burr: And also that portion of the conversation of Mr. Kinney in my office, we will let that go out too. The Court: All right, gentlemen, don't consider that. Mr. Stokeley: This question of Mr. Burr's that we objected to, we withdraw that objection to Mr. Adams about his advice and the witness afterward answered. Mr. Burr: That is out too. The Court: That is out too. Mr. Burr: Brookins was asked some questions in reference to these photographs (referring to photographs in evidence), some of them answered and some objections were sustained, too. If they want Mr. Brookins to re-examine him on that, I am willing for them

to do it.  Mr. Stokeley:  How long will it take to get him here?  Mr. Burr:  The witness stated he could not tell from these photographs, and they are all in evidence now.  Mr. Stokeley: I wanted to show by him that from the pictures he could not identify the car at all.  This witness undertook to identify this as being Mr. Watson's car; what I asked him was whether or not the different pictures I showed him was Mr. Watson's car.  I wanted to ask him if he could pick out Mr. Watson's car.  Mr. Burr:  At that time it was not shown that either one was a picture of Mr. Watson's car.  Mr. Stokeley:  We will look that up to-night and have him here in the morning if we need him.  The Court:  I will allow you to put him on.  If he comes in, I will interrupt the argument long enough for you to interrogate him.  Defendant's attorney did not call said witness to again take the stand.  Thereupon attorney for plaintiff made the following statement:  In reference to the objections which we have admitted, we think it is clear, and the jury understands what has just been excluded, but, if the attorneys for defendant are not satisfied with the sufficiency of the exclusion, we desire the stenographer to turn to his notes and have it read by question and answer?"

It is manifest that the quoted cross-examination of the defendant had for its object the introduction to the jury's consideration of wholly illegal evidence, to the effect that an indemnifying insurance company was defending, in defendants name, against liability for the wrongful death of Adams and for the wrongful injury of Franklin.  This fact, if so, was entirely outside of the issues made by the pleadings.  The legal accountability of defendant for the death of Adams and the injury of Franklin depended upon wrongful act or omission of defendant's servants.  Whether defendant was

indemnified against the legal consequences of wrongful conduct (if so) of one for whose misconduct (if so) he was legally responsible could not, in the nature of things, tend in any degree to show wrongful conduct, by his servant, proximately causing the tragedy disclosed by the evidence. It was equally as irrelevant for the purpose of affecting the credibility of the defendant as a witness in his own behalf. These conclusions are too clearly correct to require any elaboration. In this connection pertinent reference may be made to the near, though conversely presented, analogy to be found in our recent case of *Long v. K. C., M. & B. R. R. R. Co.,* 170 Ala. 635, 641, 642, 54 South. 62, where it was ruled that the fact that the plaintiff had been paid by an insurance company the value of property destroyed by fire communicated thereto by defendant's locomotive was a matter of no concern whatever to the defendant, and incapable of affording it any degree of protection or immunity from the legal consequences of its wrong in destroying plaintiff's property.

There was therefore affirmative, highly prejudicial error in the allowance of testimony to show, or tending to show, that defendant was indemnified in the premises, in any degree or fashion, by an insurance company. So the main contention for appellee, in this connection, is that the errors indicated were rendered innocuous by the withdrawal of the offending matter (quoted before) ; such retraction or elimination thereof as evidence being effected as shown by the pertinent part of the recitals last quoted from the bill of exceptions.

In *Smith v. State,* 107 Ala. 144, 18 South. 308, it was said, and so in harmony with many earlier decisions:

"Courts have been perplexed in laying down satisfactory rules, where illegal evidence calculated to prejudice the defendant has been received, and subsequently

excluded, but it may be regarded as settled in this state that the admission of illegal evidence, which is subsequently excluded and the jury instructed to disregard such evidence, cures the error, and vitiates the exception reserved to its admission."

This rule was recently again approved in *W. U. Telegraph Co. v. Rowell,* 166 Ala. 651, 51 South 880. Consistent with the reason of the rule, and in consequence of obvious necessity, the burden and obligation to subsequently remove, *to wholly neutralize,* the prejudicial effect wrought by the admission, over the adversary's seasonable and apt objection, of such illegal matter is upon the party inducing the admission of such illegal matter as evidence in the cause. He it is who must become the actor—the movant—in purging the record not only of error so wrought but also in eradicating from the minds of the jury the prejudice which the illegally admitted matter has probably or naturally effected. It was pertinently said in *Childs v. State,* 55 Ala. 30, in disapproval of the practice under consideration:

"* * * It may be difficult, sometimes, for jurors to prevent evidence that has been improperly before them from having some influence in shaping the verdict they must render."

And in consequence we may add the obligation of court and counsel to exhaust every reasonable means for the removal of all reasonably possible prejudice from the minds of the jury enhances as the subject of the illegal admission is apparently susceptible of subtle and sinister effect upon the discharge by the jury of the grave and supremely important duty committed to the jury.

In *Jordan v. State,* 79 Ala. 12, it was also pertinently said of the subsequent exclusion of the improperly received matter:

"But, in such case, the court should endeavor, as far as *practicable,* to remove *any* unfavorable and erroneous impression which such evidence may have made, and should *clearly and explicitly* instruct the jury to disregard it altogether." (Italics supplied.)

In the case of *Carlisle v. Hundley,* 15 Ala. 625, 626, this was the observation made by the court:

"Every one familiar with the practice knows how difficult it is to eradicate from the mind of the jury an injurious impression thus created (*McCurry v. Hooper,* 12 Ala. 823 [46 Am. Dec. 280]), by permitting illegal proof to be submitted to them, and, in such case, nothing short of a direct and unequivocal charge to them, to disregard the illegal proof, would be likely to erase the impression."

In the case of *Jackson v. State,* 94 Ala. 89, 10 South. 511, this was set down by Chief Justice STONE:

"It is certainly much the safer and better practice to exclude illegal testimony when first objected to. This because of the difficulty of eradicating from the minds of the jury the impression such testimony is liable to make."

In the case of *Green v. State,* 96 Ala. 32, 11 South. 479, touching the practice under view, it was said:

"*This court regards with caution* the practice of admitting illegal evidence and afterwards excluding it. It has frequently declared that the practice cannot be. encouraged.  *  *  *" (Italics supplied.)

There are other deliverances made here that likewise conclude in expression of this court's long maintained and wisely chosen attitude of care and caution, suggested by the delicacy, difficulty, and importance of the matter, in such circumstances.

The obligation being to cure error already committed to the objector's prejudice, manifestly there is no

duty upon him to take further action after season-
ably and properly reserving an exception to the adverse
ruling of the court on his objection.   He may stand
upon his exception; and if the error committed is not
cured as we have stated, his seasonably and proper
exception will avail on appeal without other action on
the objector's part.   But of course he may waive the
error, and its injurious effect—a consideration that will
be later adverted to.

Were the errors in respect of the insurance, improp-
erly admitted during the cross-examination of defend-
ant, cured by what was subsequent said and done?  The
last quotation from the bill discloses all the bill shows
in this connection.

Without cumbering the opinion with a repetition of
the defendant's examination by counsel for plaintiffs, it
will suffice to state the conclusions of obvious evidential
effects to be necessarily drawn therefrom.   The witness
was the defendant.   He, before all others, must ever·be
presumed to know who are *his* engaged counsel, repre-
senting him on the trial.   To draw from him, as a wit-
ness, the statements in effect that he did not engage
named counsel appearing of record in behalf of the de-
fendant; that he is not paying named counsel of rec-·
ord for service in the litigation; that he does not know
who did employ named counsel of record for the de-
fense; that he does not know that the "Ætna Insurance
Company" was employing such counsel; that he (wit-
ness) supposes, though he cannot swear it, one of such
counsel is representing the "Ætna Insurance Company"
in the cause; that he (witness) is under the 'impression
he (named counsel of record for defendant) is" repre-
senting that "concern"—naturally and reasonably tend-
ed to establish or give support to these, among other
possible, matters of fact:   (a) That the insurance com-

pany named had a vital interest in the defeat of plaintiffs' causes of action ; (b) that that interest was in the nature of an indemnity to defendant; (c) that defendant's interest in the contest was at most coordinate with, and perhaps subordinate to, that of the insurance company; (d) that the dominating direction and control of the defense, though in defendant's name, was with counsel furnished and engaged by an insurance company.

Now, what was the court's invitation to subsequently exclude in this connection, and what did the court's statement to the jury effect? We quote:

"Mr. Burr stated: There are two or three exceptions that Mr. Stokeley took that I want to consent that that evidence be excluded so there cannot be any possible question about it. * * * Mr. Burr: The testimony of Mr. Watson in reference that he supposed that Mr. Stokeley and Mr. Ward were representing an insurance company. I want that excluded, and what he said in reference to his employment of these gentlemen. The Court: 'That will not be before you for consideration.' "

In view of the manifest evidential effect of Watson's examination, on the cross, on this subject, we are clear to the point that what was said and done, by counsel and by the court, fell far short of full, due effort to eradicate from the minds of the jury the "unfavorable and erroneous impression," necessarily made thereby. Aside from the very near profunctory manner and method by which the exclusion was undertaken, there was a marked indefiniteness and generality in respect of the matter desired to be excluded in this connection. This is apparent when reference is had to the recitals of the bill which we have quoted before. The difficulty, at best, of eradicating the "unfavorable and erroneous" impression naturally to follow what is shown to have occurred

demanded a more definite, and at the same time a more comprehensive, pointing out the matter desired to be excluded, to cure error. This conclusion of fact is further supported by the subsequent proffer of counsel (for plaintiffs), after affirming that the jury understood what had been excluded, that:

"If the attorneys for defendant are not satisfied with the sufficiency of the exclusion, we desire the stenographer to turn to his notes and have it read by question and answer."

And the statement of the court, "If we assume that *you* therein referred to the jury, and that the jury so understood the reference," was not sufficient in direct, positive, and unequuovical instruction to effect the eradication from the jury's minds of the impression naturally made by the cross-examination of Watson on this subject. The court simply said, "That will not be before you for consideration." The court, if it would have eliminated even obviously invited unfavorable impressions made by the examination quoted before, should have affirmatively instructed the jury to entirely disregard the whole matter and to not consider not only the fact of the nonemployment of counsel by defendant or of their employment by the insurance company but also to not consider *for any purpose* the matter drawn out in this connection. When it is remembered that this effort to exclude was not made until after all the evidence had been submitted to the jury—some time after the admission of this illegal matter to the jury—the inefficiency of the little more than casual statement of the court is emphasized. The court did not undertake, except by a pronoun adoption of what counsel had just said, to draw to the particular attention of the jury that which was to be excluded. As always and inevitably, evidence admitted and submitted to a jury

is a factor, in an active sense, at once upon its submission. The theory (if it prevails) that juries will not or do not consider evidence until they retire to consider of and to make up their verdicts is not to be recognized in such circumstances. Our cases, quoted before, refuted the theory, and so are in harmony with the common experience. So, when the court merely said "that will not be before you for consideration," there was a manifest omission to condemn and remove any impression that might reasonably have been accepted by the jury, or any of the jury, during the consideration that preceded the court's impositive, indefinite statement (assumed to be) addressed to, and so understood by, this jury.

It is in effect insisted that the stated proffer of counsel for plaintiffs to counsel for defendant to have the questions and answers read by the stenographer, if defendant's counsel were not satisfied with the sufficiency of the exclusion attempted, was a waiver in the premises. The burden was not, as has been stated, on the defendant to contribute to the curing of the errors and the eradication of the prejudicial effects resulting therefrom. It was not given the court or counsel to require the exceptor to affirm or to deny the sufficiency of the exclusion attempted. That the exceptor's counsel made no response to the proffer of plaintiffs' counsel could not operate as an affirmation in the premises. It does not appear that any response was made to the proffer of plaintiffs' counsel. If defendant's counsel had conceded the sufficiency of the attempted exclusion or had objected to further effort to effect a sufficient exclusion, there would have been a complete waiver in the premises. Such does not appear to have been the circumstances.

Prejudicial error, that was not cured, affects the judgments.

[Watson v. Adams and Watson v. Franklin.]

The following special charge, requested by the defendant, was given to the jury:

" 'The evidence in this case is entirely circumstantial, and circumstantial evidence is accepted with great caution, and if you find that all of the circumstances tending to show that defendant's car collided with the plaintiff, Franklin, and the deceased, Adams, have been fully explained, to your reasonable satisfaction, and you are satisfied from the evidence of the truth of such explanation, then it would be your duty to return a verdict for the defendant.' "

The bill of exceptions there recites these occurrences:

"Immediately after reading said written charges, the court stated to the jury: 'I also charge you that the proof of alibi is also accepted with great caution.' Thereupon the defendant, in open court, after all of the charge had been completed, duly excepted to that part of the charge of the court, viz.: 'I also charge you that the proof of alibi is also accepted with great caution.' Thereupon the court stated to the jury: 'I want to withdraw what I said as to the question of alibi, and charge you on that subject as follows: If you believe from the evidence in this case that the plea of an alibi was not interposed in good faith, or that the evidence to sustain it is simulated, false, and fraudulent, then this is a discrediting circumstance to which you may look in connection with all the other evidence in determining your verdict.' The defendant thereupon, in open court, duly excepted to the foregoing part of the court's oral charge last quoted, as follows: 'If you believe from the evidence in this case that the plea of an alibi was not interposed in good faith, or that the evidence to sustain it is simulated, false, and fraudulent, then this is a discrediting circumstance to which you may look in con-

nection with all the other evidence in determining your verdict.' "

While the complaint in the case of Adams, who was killed, is drawn under the Homicide Act (Code, § 2486), and the recoverable damage is punitive only, yet the action is civil, not penal or quasi criminal.—*Sou. Ry. Co. v. Bush,* 122 Ala. 470, 488, 489, 26 South. 168. The term "alibi" is of the criminal parlance only. It has no place in civil proceedings of this nature. If John Belt was on trial for criminal conduct, in respect of the death of Adams or the injury of Franklin, and sought to show his presence elsewhere at the time of their injury, the term "alibi" would have appropriate place in the proceeding. Here the action is civil. It would fix liability upon the defendant under the doctrine of respondent superior. It is not pretended that Watson, the defendant, had any hand in the tragedy. It is by imputation only that he is asserted to be responsible and in consequence liable. The special charge quoted was correctly given to the jury. But the court fell into affirmative error in its effort to cure what the court evidently thought was of at least doubtful propriety in charging, as it did, with respect to the great caution with which proof of an *alibi* is accepted. The effort to correct, if indeed it did not amplify the unwisdom of the first voluntary statement, took the form of appropriating approved language in *Tatum v. State,* 131 Ala. 35, 31 South. 369. Whether that language, and the proposition it announced, is in accord with *Albritton Case,* 94 Ala. 76, 10 South. 426, and *Beaver's Case,* 103 Ala. 36, 15 South. 616—a matter of doubt at least to the author of 5 Mayfield's Digest (see page 22)—need not now be considered, though upon proper occasion it may well be inquired into. It will suffice to point out that the inducement possible or probable of operation in a civil suit,

[Watson v. Adams and Watson v. Franklin.]

to avert the imposition of damages, is not the equivalent of the reason why a detected false, perjurious, fraudulent *alibi* in a *criminal's* defense is said, in *Tatum's Case, supra,* to import against the defendant *discrediting* circumstance. In the latter proceeding there is the great natural call to prevent the infliction of personal punishment by defeating the adjudication of criminal guilt. In the former, the civil action, there is no effort to impose servitude or to deny freedom or to exact the life of the offender. Great as the love of money may be in some human beings, it cannot be presumed that to be held liable for damages is, to the ordinary man, the equivalent of the impending, unless diverted, exaction of his freedom or his life as the law's penalty for its violation. This action of the court also affects the judgments with error.

There are other questions argued by the respective counsel in their briefs. The conclusion prevailing here renders it unnecessary to treat them. Doubtless all questionable testimony will be avoided on the retrial to which the causes are remanded.

Both judgments are reversed; and both causes are remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and DE GRAFFEN-RIED, JJ., concur.