# Talley v. Whitlock.

### Damages from Surgical Operation.

(Decided December 7, 1916. Rehearing denied January 18, 1917. 73 South. 976.)

1. **Physicians and Surgeons; Malpractice; Pleading.**—The rule is that where the facts stated in the complaint are sufficient to show the duty and that the defendant failed to perform it, it is not necessary to define the quo modo, or to specify the particular acts of diligence that should have been employed; under this rule the complaint in this case was not subject to demurrer for the generality of its averments of negligence.

2. **Same; Civil Liability.**—A civil action for malpractice against a physician and surgeon may be sustained on proof of his failure to exercise reasonable and ordinary care, diligence and skill in respect to the duty undertaken as such physician and surgeon, the same care and skill that physicians and surgeons in the same general neighborhood pursuing the same line of practice ordinarily employ and exercise in like cases; there is no rule of

[Talley v. Whitlock.]

responsibility which requires of the physician or surgeon infallibility in the diagnosis or treatment of the disease.

3. **Same; Evidence; Opinion.**—Where the action was against a physician for malpractice in having negligently left a drainage tube in the incision for the operation, and another physician testified that later he removed a tube from plaintiff's body and described it when he removed it and the tube was exhibited to the jury in like condition, the question to such physician "Would you as a surgeon, could you as a surgeon, tell whether or not there had been any attachment to the tube?" and his answer, "I looked for it and could not see any" were not improper as touching the opinion of a surgeon as to how he would have secured the tube to plaintiff's body; the question sought only to elicit the fact that when he removed the tube from plaintiff's body there was no attachment to that tube.

4. **Witnesses; Unresponsive Answer; Who May Object.**—No one except the party asking the question can object to the answer of the witness that it was not strictly responsive to the question.

5. **Physicians; Malpractice; Evidence.**—Where the action was for malpractice in leaving a pus drainage tube in plaintiff's body after a surgical operation, and another physician testified to the condition of the tube when he later took it from the thoracic cavity of plaintiff's body, the question to such latter physician "was there any signs of any hole or string or pin, safety pin or otherwise, or any kind of attachment when you first took that tube out?" and the answer of the witness "No," were competent as being but the statement of a fact.

6. **Same; Civil Liability.**—If a surgeon used the best method of anchoring a pus drainage tube in the patient's body, but was negligent in the execution of that method he was liable to the patient for malpractice under the averment that such physician so negligently and unskillfully conducted himself in regard to his duty as operating surgeon that as a proximate consequence the drainage tube became or was misplaced in plaintiff's body.

7. **Same; Instructions.**—In such an action a charge asserting that under the rules of the hospital the duty of the defendant was only to operate and to properly place a drainage tube in the wound, and that it was thereafter the duty of the resident physician or nurse to dress the wound and keep the tube in position, and if the jury should believe from the evidence that the tube was properly placed at the time of the operation by the defendant but that it became misplaced thereafter they should find verdict for the defendant, was properly refused as not taking into consideration the proper securing in place of the drainage tube.

8. **Same; Intervening Act of Another.**—The act of the resident physician at the hospital in dealing with the drainage tube in a patient's body was not a defense for any negligence chargeable to the operating surgeon in leaving it there, or in failing to properly secure it, unless the act of the resident physician was the sole proximate cause of the injury.

9. **Same; Jury Question.**—Under the evidence in this case it was a question for the jury as to whether the operating surgeon was negligent in placing or leaving a pus drainage tube in plaintiff's body.

10. **New Trial; Disregarding Instructions.**—The verdict of the jury rendered in disregard of instructions given should be set aside, although the instructions were erroneous.

11. **Same.**—Where the verdict conflicts with the court's instructions it will ordinarily be set aside although the instructions were erroneous, but if the

### [Talley v. Whitlock.]

verdict is in accord with other instructions of the court correctly stating the law it will be upheld.

12. **Appeal and Error; Antagonistic Charges; Right to Complain.**—Where antagonistic instructions are given in a civil case at the request of the same party, such party cannot be heard to complain on appeal that either charge was erroneous.

APPEAL from Birmingham City Court.

Heard before Hon. JOHN H. MILLER.

Action by James Howard Whitlock, by next friend, against Dr. D. F. Talley. Judgment for plaintiff, and defendant appeals. Transferred from the Court of Appeals under section 6, Act April 18, 1911, p. 449. Affirmed.

The facts and objections to evidence sufficiently appear. The following assignments of error are referred to: Second, third, fourth, and fifth—all of which treat of the question and answer of Drs. Field and Clements, stated in the opinion. The following charges are given at plaintiff's request:

(A1) "By directly causing injury," as used in one charge, the court does not mean following immediately after negligence, but only that the negligence must be the legal and proximate cause of the injury.

(4) Even though Dr. Talley exercised due care, skill, and diligence in the selection of a method of anchoring the drainage tube, yet, if the jury are further reasonably satisfied from the evidence that he did not carry out such method with due care, then such faliure would be negligence.

(C1) Under the evidence undisputed in this case, if the jury believe it, Dr. Talley, the defendant, undertook to perform a surgical operation upon plaintiff and to place a drainage tube in the wound or opening, and to use ordinary skill, care, and diligence in that regard.

The following charges were refused to defendant:

(2) If you believe from the evidence that, under the system and custom and rules at the Hillman Hospital, the duty of defendant was only to operate upon plaintiff, and to properly place a drainage tube in the wound or cut made by the operation, and that thereafter it was the duty of the resident physician or the nurse to dress the wound or cut, and to keep the drainage tube in position, and if you further believe from the evidence that the tube was properly placed at the time of the operation by Dr. Talley, but that thereafter it became misplaced, you should return a verdict for defendant.

(3) If the jury believe from the evidence that the drainage tube was misplaced in the wound or cut while the same was being dressed by the resident physician at the Hillman Hospital, or after plaintiff was removed from hospital, you should return a verdict for defendant.

DAVID S. ANDERSON and FRANK DOMINICK for appellant. HARSH, HARSH & HARSH for appellee.

THOMAS, J.—This action is for negligence in the performance of a surgical operation. Defendant made an incision in plaintiff's chest wall, and placed therein a tube for the purpose of draining pus. It is alleged that the tube was negligently inserted or secured therein, and that it slipped into the cavity of plaintiff's body, preventing him from recovering, causing him pain and injury, and making necessary a second operation to relieve him by removing said tube.

(1) The averment of negligence in the one count of the complaint on which the trial was had is: "Defendant was a practicing physician and surgeon in the city of Birmingham, Ala., and as such undertook  *  *  *  to perform a surgical operation upon plaintiff and to leave in the wound or cut made by said surgical operation a draining tube. Plaintiff avers that defendant so negligently or unskillfully conducted himself in that regard that as a proximate consequence of said negligence said drainage tube became or was misplaced in plaintiff's body and remained in his body so misplaced for a long time," etc.

It has been repeatedly ruled by this court that, where the facts stated in the complaint are sufficient to show the duty, and that the defendant negligently failed to do or perform this duty, it is not necessary to define the quo modo or to specify the particular acts of diligence that should have been employed in the performance of such duty.—*McCary v. A. G. S. R. R. Co.*, 182 Ala. 597, 62 South. 18; *Robinson v. Crotwell*, 175 Ala. 194, 57 South. 23; *Southern Railway Co. v. Arnold*, 162 Ala. 570, 50 South. 293; *Gray Eagle Coal Co. v. Lewis*, 161 Ala. 415, 49 South. 859; *Southern Railway Co. v. Stewart*, 153 Ala. 133, 45 South. 51; *Southern Railway Co. v. Burgess*, 143 Ala. 364, 42 South. 35; *L. & N. R. R. Co. v. Marbury Lumber Co.*, 125 Ala. 237, 28 South. 438, 50 L. R. A. 620.

The complaint was not subject to demurrer for the generality of its averment of negligence.

(2) A civil action for malpractice against a physician and surgeon may be sustained, on proof of a failure to exercise such reasonable and ordinary care, diligence, and skill in respect to the duty so assumed and undertaken as physician and surgeon, such care and skill as physicians and surgeons in the same general neighborhood, pursuing the same general line of practice, ordinarily employ and exercise in a like case.—*Robinson v. Crotwell, supra; Carpenter v. Walker,* 170 Ala. 659, 54 South. 60, Ann. Cas. 1912D, 863; *Shelton v. Hacelip,* 167 Ala. 217, 51 South. 937; *McDonald v. Harris,* 131 Ala. 359, 31 South. 548; 30 Cyc. 1575; 14 Am. & Eng. Ency. Law (1st Ed.) pp. 76, 78. But there is no rule of responsibility which requires of the physician or surgeon "infallibility in the diagnosis or treatment of disease."—*Hamrick v. Shipp,* 169 Ala. 171, 52 South. 932; *Robinson v. Crotwell, supra.*

(3) The second, third, fourth, and fifth assignments of error are based upon the overruling of objections to questions propounded to Drs. Fields and Clements, and of motions to exclude the answers. Each of these physicians and surgeons was engaged in like practice, and in the same neighborhood, with the defendant, at the times of both operations on plaintiff. Dr. Fields had testified that, with the assistance of Dr. Clements, Fields operating, he removed the tube from that portion of the body of plaintiff whence the pus was discharged. He described the condition of the tube when he removed it, and the tube was exhibited to the jury in like condition. He was then asked: "Would you as a surgeon—could you as a surgeon tell whether or not there had been any attachment to that tube?" The witness replied: "I looked for it, and could not see any." The question to, and the reply of the witness was not touching the opinion of a surgeon as to how the witness, as a surgeon, would have secured the tube in plaintiff's body. It was sought to elicit only that when he removed the tube from plaintiff's thoracic cavity there was no attachment thereto. The observed data were for the jury's consideration.—Wig. Ev. § 1410. Moreover, the witness had testified without objection that he found the tube as exhibited; that there were no marks or signs or holes or anything on or about the tube indicating that there had been an attachment thereon; that witness "noticed to see if such had been the case, and none was discoverable."

[Talley v. Whitlock.]

(4) On the other hand, if the objection to the answer was that the answer was not strictly responsive to the question, only the party asking the question could object to the answer on this ground.—*Cent. of Ga. Ry. Co. v. Chicago Co.,* 169 Ala. 287, 291, 53 South. 832; *In re. Dunahugh,* 130 Iowa 692, 107 N. W. 925; *Merkle v. Bennington,* 58 Mich. 156, 24 N. W. 776, 55 Am. Rep. 666; *Jones v. New York Cent.,* 46 App. Div. 470, 61 N. Y. Supp. 721.

(5) So, of the question to witness, Dr. Clements, "Was there any sign of any hole or string or pin, safety pin or otherwise, or any kind of attachment, when you first took that tube out?" and of the answer, "No, sir." If the testimony had been incompetent (which we do not concede) plaintiff's counsel's consent "that it will go out" might not have been sufficient for the delicate, important, and difficult task of removing the prejudicial effect of evidence improperly admitted—the task, incumbent on the party causing its admission, of eradicating the "poison."—*Watson v. Adams,* 187 Ala. 490, 65 South. 528, Ann. Cas. 1916E, 565. When, however, all of the testimony of the witness Clements as to the condition of the tube when taken from plaintiff's thoracic cavity is considered, we find no error in the court's ruling upon the introduction of this evidence. It was but the statement of a fact —of the condition of the tube when taken from plaintiff's body by Dr. Fields. The case of *Watson v. Adams, supra,* has no similarity in facts to the case at bar.

Charge A1, given at plaintiff's request, instructs the jury that the alleged negligence must have been the direct cause of the injury complained of, though there was an intervening agency which would not have interposed and contributed to the injury had it not been for the original, direct causation—that is, the negligence complained of.—*Armstrong, Adm'r, v. M. S. R. Co.,* 123 Ala. 233, 26 South. 349; *Briggs v. B. R. L. & P. Co.,* 188 Ala. 262, 66 South. 95; *L. & N. R. Co. v. Jones,* 83 Ala. 376, 3 South. 902; 2 Mod. Amer. Law, p. 122, § 14 et seq. The old "Squib" Case (*Scott v. Shepherd,* 2 Wm. Blackstone's Rep. 892; s. c. 3 Wilson 403) is in point.—1 Chitty on Pleading (16th Ed.) § 142, p. 183. Charge A1 was explanatory of defendant's charge No. 11.

(6) Given charge B1, requested by plaintiff, is as follows: "The court in its charges given does not mean that Dr. Talley would not be responsible for his negligence, if any there was,

2—199

in or about anchoring the tube, even though he used the best method of anchoring, if he did use the best method."

Under the evidence the effect of the charge was to instruct the jury that, even though the surgeon may have used the best method of anchoring the drainage tube in the first instance, yet he would be responsible for his negligent failure to exercise the reasonable and ordinary care, skill, and diligence required of surgeons in the same general neighborhood, in doing the same service, i. e., placing the drainage, as well as anchoring it, after the "best method." If the method of anchoring the tube was the best, but defendant was negligent in the execution of that method, he would nevertheless be liable under the averment of negligence of the count, where, after showing his duty as operating surgeon, it is averred that: "The defendant so negligently and unskillfully conducted himself in that regard that, as a proximate consequence of said negligence, said drainage tube became or was misplaced in plaintiff's body," etc.

Charge D was properly given at plaintiff's request.

Given charge C1, for plaintiff, exacted no higher degree of care, skill, and diligence than that declared in defendant's given charges 5, 6, and 8, which was the measure of duty of the physician and surgeon in such a case in any community, though the degree of care, skill, and diligence exacted of practicing physicians and surgeons of different communities may not necessarily be the same.

(7) Refused charge 2 does not take into consideration the proper securing in place of the drainage tube. The defendant might have put the tube in the proper place and yet negligently secured it thereon. But even if this charge was not subject to criticism, the defendant had the benefit of it under given charges 5 and 6.

(8) Defendant's charge 3 was properly refused, for the reason that it predicated the alleged misplacement to the resident physician at the Hillman Hospital, and pretermitted inquiry of the proper placement and securing of the tube in the first instance by the defendant. The subsequent act of another was no defense for any negligence chargeable to the defendant, unless that act of that other was the sole proximate cause of the injury complained of.

Assignments of error numbered from 14 to 17, inclusive, are not insisted on in argument of counsel, and need not be discussed. —*Georgia Cotton Co. v. Lee,* 196 Ala. 599, 72 South. 158.

[Talley v. Whitlock.]

(9) The evidence was sufficient to take the case to the jury on the idea that the tube was not fastened, or was not sufficiently secured to prevent its slipping into the cavity of plaintiffs' body. —*Tobler v. Pioneer Co.*, 166 Ala. 517, 52 South. 86; *Amerson v. Corona Coal & Iron Co.*, 194 Ala. 175, 69 South. 601. The plaintiff's father testified:

"I saw the tube when she [the nurse] went to dress him the next morning. * * * As to whether the drainage tube had any clothes pin or other thing attached to it, I say it did not have anything at all. It did not have any safety pin or any kind of thing attached to the tube. The tube was not sewed through or sewed to the skin or any thing of that kind. * * * As to where it was and when it was I heard Dr. Talley make any statement about that tube, I say: In the operating room at the Hillman Hospital, Birmingham, and it was about four days after he had put the tube in the boy's side. He was operating on a negro who had had his skull fractured, and he took out some of the skull and put a piece of gauze in it, and put a pin through it, a safety pin, and explained to the clinic that that was the way he should have fastened the tube in my boy, and there would have been no chance for it to get away, but he thought it would be all right. * * * Dr. Talley said the Whitlock child would be the next operation, and that he would try to get the tube out. He said he should have put a safety pin there. His exact words were * * * he should have used a safety pin in that tube there, and there would not have been a chance for it to have gotten in."

This evidence was emphasized by the further fact that the tube did slip into the cavity of plaintiff's body, and that it was exhibited in evidence to the jury, that they might see whether there were marks of its having been sewed or otherwise attached to the body.

Tested by the rule declared in *Cobb v. Malone*, 92 Ala. 630, 9 South. 738, and in *N. C. & St. L. Ry. v. Crosby*, 194 Ala. 338, 70 South. 7, the trial court committed no error in refusing to set aside the verdict of the jury and award a new trial on the ground of insufficiency of the evidence.

Appellant further insists that the verdict was contrary to the law of the case as given the jury by the court. On this phase of the motion for a new trial the question of conflicting instructions to the jury by the court must now be considered.

(10) It is essential to the orderly administration of the law, as well as consonant with the power given under section 4635 of

the Code, that the jury obey the instructions the court gives them on the law of the case.—*Meadows v. State,* 182 Ala. 51, 62 South. 737, Ann. Cas. 1915D, 663; *Fleming & Hines v. L. & N. R. R. Co.,* 148 Ala. 527, 41 South. 683; *Wolf v. Doe, ex dem. Delage,* 150 Ala. 445, 43 South. 856; *Marcus v. State,* 89 Ala. 23, 8 South. 155; *Irwin v. Thompson,* 27 Kan. 643; *Bushnell v. Chicago,* 69 Iowa, 620, 29 N. W. 753; 29 Cyc. 618. A verdict rendered in disregard of instructions given, even though they be erroneous, is against the law and should be set aside.—*Delage's Case, supra; Fleming & Hines v. L. & N. R. R. Co., supra; Marcus v. State, supra; Murray v. Heinze,* 17 Mont. 353, 42 Pac. 1057, 43 Pac. 714; *Caffrey v. Groome,* 10 Iowa 548; *Jewett v. Smart,* 11 Iowa 505.

Charge No. 16, given the defendant by consent of the plaintiff, is as follows:

"Unless you are reasonably satisfied from the proofs that Dr. Talley, the defendant, did not leave in the wound or cut made by said surgical operation a drainage tube, then your verdict must be for the defendant."

Did this charge become a part of the law of the case? Was the verdict contrary to the charge of the court? This charge in effect instructed the jury that unless they were reasonably satisfied from the proof that Dr. Talley did not leave in the wound or cut a drainage tube, a verdict must be returned for the defendant. Under all the evidence the jury were bound to find that Dr. Talley did leave the drainage tube in the wound or cut made by him in performing the surgical operation on plaintiff. If they so found, then, under this charge "given by consent," it was their duty to return a verdict for the defendant. As the jury did not so find, their verdict was contrary to the quoted portion of the court's instructions.

(11) If, however, the defendant asks conflicting instructions, which are given by the court, can he complain that the verdict is contrary to the law of the case? It is well established that a verdict in conflict with the court's instructions will ordinarily be reversed notwithstanding the instructions are erroneous; yet, where such verdict is in accord with another instruction of the court, correctly stating the law, the verdict will be sustained.

In *Cobb v. I. C. R. R. Co.,* 38 Iowa 601, 620, the court said on this question: "The findings of the jury, then, are in accord with one instruction, and in conflict with others. The instruc-

tions with which the findings conflict may not be in harmony with the law, as we have seen. While we may set aside a verdict which is contrary to erroneous instructions, we cannot do so where there are conflicting instructions, some of which, being in harmony with the law, support the finding. The jury cannot be said to have disobeyed the instructions of the court in that case."

The principle of the *Cobb Case, supra,* was in effect applied by our court in *Green & Son v. Lineville Drug Company,* 167 Ala. 372, 379, 52 South. 433, 436, where it is said: "That part of the court's oral charge excepted to is without error, in accordance with the construction we have given the contract, and if charge 13, given at the request of the plaintiff, is contradictory thereto, the appellants cannot complain of it, as it was in their favor."— *Tygh v. Dolan,* 95 Ala. 269, 10 South. 837.

So in *Travis v. Sloss-Sheffield Steel & Iron Co.,* 162 Ala. 605, 50 South. 108, the court said: "A party is not allowed to mislead the court into error, even unintentionally, and profit thereby. But it is proper here to say that there appears no intention on the part of counsel for either side to mislead the court."

Though that case is not parallel to the case at bar, the governing principle of the *Travis Case* is similar to that involved in the question now under consideration.

(12) The statement of the rule in *Roberson v. State,* 183 Ala. 43, 60, 62 South. 837, is not in conflict with the conclusion we now reach, viz.: Where antagonistic charges are given in a civil case at the request of one party, that party cannot be heard to complain that either charge was erroneous. Nor can we say the verdict was contrary to the law of the case, where it is clear that the verdict was in accord with the law of the case announced in the general charge of the court and in one of the antagonistic charges requested by such excepting party.

This question is discussed in *Pulaski Coal Co. v. Gibboney Sand Bar Co.,* 110 Va. 444, 66 S. E. 73, 24 L. R. A. (N. S.) 1185, 1188, where it was declared to be impossible to say what measure of damage the jury followed, since a different rule was declared in the plaintiff's given instructions 4 and 5 to that of its instruction No. 1. Of necessity the Virginia court reached the just conclusion in that case in its reversal that there might be by the trial court a correct statement of the measure of damages in the event of recovery.

When, however, as in the instant case, the general charge of the court fully and fairly states the law of liability, and the given charges for the plaintiff and for the defendant (such as numbers 6, 7, 8, 14, and 14½ in this case) do likewise, and the verdict is in accord with this view of the law, as applied to the plaintiff's phase of the case, a reversal should not be awarded on the ground of such antagonism between charges.

Affirmed.

McCLELLAN, MAYFIELD, and SOMERVILLE, JJ., concur.