(123 So. 285)

## McKISSIC v. STATE. (4 Div. 540.)

Court of Appeals of Alabama. June 18, 1929.

Sollie & Sollie, of Ozark, for appellant.

Charlie C. McCall, Atty. Gen., and J. W. Brassell, Asst. Atty. Gen., for the State.

RICE, J. Appellant was indicted, tried, and convicted for and of the offense of murder in the second degree. His punishment was fixed at imprisonment in the penitentiary for a term of ten years.

The testimony offered on behalf of the state and that offered on behalf of the appellant (defendant) seems to show without conflict that the deceased, John Dick, and the appellant had had a difficulty, or altercation, or fight, on the same day of, and a short while prior to, the time of the killing of deceased by the appellant.

The state's theory, supported by its testimony, was that after the above-mentioned difficulty, appellant procured a shotgun, intercepted deceased in a public roadway, halted him, ordered him to throw his (deceased's) gun out of the car in which he (deceased) was riding, and fired the shot which killed deceased while his hands were raised in the air, and while he was making no gesture toward appellant, but was begging for his own life.

The theory of appellant, likewise supported by the testimony offered on his behalf, was that subsequent to the prior difficulty, already referred to, deceased came to the home of appellant, ordered appellant, using a vile epithet, to "come out," stating that he, deceased, was "going to kill him"; that appellant went to the home of a neighbor, procured a shotgun, and that while on his direct route back to his home he came up with deceased, who got out of the car in which he was riding, raised his (deceased's) gun into shooting position, pointing it toward appellant, and that appellant shot deceased while he was in this position, and that his act in so doing was done solely in defense of his own life.

The above is a rather meager statement of the circumstances surrounding the homicide, but we think it will serve as a sufficient basis for what we have to say.

Appellant's able counsel have filed a brief on this appeal, and while we have discharged our duty of carefully reading and searching the record for error prejudicial to appellant's rights, yet we are persuaded that no rulings are apparent which merit any discussion by us, other than those discussed in appellant's brief. Accordingly, we will take up, in the order they have been treated in said brief, the questions meriting, in our opinion, any specific mention.

It is true that, in the first instance, the trial court fell into error in allowing to go in evidence some of the details of the former difficulty between deceased and appellant, but, later, we are persuaded, and so hold, the court sufficiently excluded this testimony, and was amply careful to eradicate any injurious effect it may have had upon the jury. The circumstances regarding the admission

of this improper evidence, and its later exclusion, were not, in our opinion, comparable to those surrounding the admission, and later exclusion, of the testimony discussed in the opinion in the case of Watson v. Adams, 187 Ala. 490, 65 So. 528, Ann. Cas. 1916E, 565, and we do not regard the decision in that case as in any way precluding our holding here. At most, the testimony in this case, here under discussion, came out indirectly, and we think the action of the trial court in specifically excluding it from the jury's consideration, and in instructing them not to consider it, was ample to eradicate any unfair effect it may have been calculated to have. And so, of the testimony regarding a conversation between state's witness Martin and deceased, out of the presence of defendant (appellant).

The other exceptions based on the rulings as to the admission or rejection of testimony have each been examined, in the light of the remarks of appellant's able counsel. We do not believe the questions raised are of a nature that require any discussion by us. They are simple, and we content ourselves with the statement that no prejudicial error, certainly none of reversible moment, appears in any of the rulings raising them. The testimony as to the immediate facts of the killing was in large part, if not entirely, that given by members of the colored race, known locally as "niggers," and, as is their nature, they were at times rather too voluble about more or less immaterial or irrelevant matters. But a close study of the record reveals the fact that the trial judge was careful to eliminate from the jury's consideration everything that did not have a legitimate bearing upon the issue submitted to them, i. e., whether or not appellant was justified under his plea of self-defense, the killing by him of deceased being admitted. So far as we can observe, or as has been pointed out by the distinguished counsel here representing the appellant, proper latitude was given to him to present every offered item of testimony tending legally to establish his defense. And the testimony on behalf of the state was properly held within the issue. It is simply one of those cases where the verdict of the jury, to those, as we, reading the cold record, seems strange, possibly unjust, but where the testimony fairly supports the verdict and seems to have been taken under correct rulings by the court.

The comprehensive oral charge of the court, in connection with the large number of written charges given at appellant's request, covered every phase of the law applicable to the case. We have examined each of the written charges requested by and refused to appellant. In each instance we find that if the charge is not patently and obviously incorrect, argumentative, confused, or confusing, the principle of law embraced in it was fully covered by and included in the trial court's excellent oral charge.

The case appears to have been carefully and correctly tried.

The judgment is affirmed.

Affirmed.