## EASTERN OREGON LAND CO. v. COLE et al.

### (Circuit Court of Appeals, Ninth Circuit. February 6, 1899.)

### No. 453.

**1.** EJECTMENT—DEFENSES—ADVERSE POSSESSION—NOTORIOUS OWNERSHIP—EVIDENCE.

Where, in ejectment, defendant's possession of the land in controversy was admitted, evidence that his grantor had been uniformly considered the owner, in the community where the land was situated, for a period sufficient to establish defendant's claim of title by adverse possession, was admissible to show the character of plaintiff's possession.

**2.** SAME—INSTRUCTIONS—ADVERSE POSSESSION—DEFINITION—COLOR OF TITLE.

A charge that if plaintiff and his predecessors in interest had held "adverse, actual, open, and continuous possession of the premises in controversy for a period of 10 years, a complete title was thereby acquired," correctly defines "adverse possession," since the word "adverse," is a general term, and includes a claim under color of title.

**3.** REVIEW—OMISSION TO CHARGE—FAILURE TO REQUEST INSTRUCTIONS—EFFECT.

Where no requests to charge are made, an omission to charge on a particular point, or an objection that a particular instruction was not sufficiently definite, cannot be assigned as error on appeal.

In Error to the Circuit Court of the United States for the District of Oregon.

This was an action of ejectment commenced by the plaintiff in error in the circuit court of the United States for the district of Oregon on the 26th day of September, 1896, against T. J. Cole, J. L. Cole, and Emory Cole, to recover the possession of certain lands in Malheur county, Or., within what is known as the "Dalles Military Road Land Grant," and for damages in the sum of $3,600 for withholding the same. The plaintiff alleged ownership of the land in fee simple, derived under an act of congress entitled "An act granting lands to the state of Oregon to aid in the construction of a military wagon road from Dalles City, on the Columbia river, to Fort Boise, on the Snake river," approved February 25, 1867. 14 Stat. 409. It was further alleged: That the act of congress granted to the state of Oregon certain lands to aid in the construction of a military wagon road from Dallas City, on the Columbia river, by way of Watson, Canyon City, and Mormon or Humboldt Basin, to a point on Snake river opposite Ft. Boise, in Idaho territory. That these lands consisted of alternate sections of public lands, designated by odd numbers, to the extent of three sections in width on each side of said road. That the lands thereby granted to the state should be disposed of only in the following manner: "That is to say, that the governor of said state shall certify to the secretary of the interior that ten consecutive miles of said road are completed, then a quantity of land hereby granted, not to exceed thirty sections, shall be sold, and so on from time to time until the road shall be completed." That on the 20th day of October, 1868, the legislative assembly of the state of Oregon passed, and the governor of the state approved, an act entitled "An act dedicating certain lands to the Dalles Military Road Company." That this act set forth the act of congress, and granted to the Dalles Military Road Company all lands, right of way, rights, privileges, and immunities granted or pledged to the state of Oregon by said act of congress, and also granted and pledged to said the Dalles Military Road Company all moneys, lands, rights, privileges, and immunities which might thereafter be granted to the state of Oregon to aid in the construction of said road. That prior to the 23d day of June, 1869, the Dalles Military Road Company surveyed and definitely located the line of its said wagon road between the points and upon the route designated in said act of congress and in the said act of the legislative assembly of the state of Oregon, and had fully constructed and completed said road, and filed in the executive office of the governor of the state of Oregon a plat or map of the said Dalles Military Road, upon which was traced and

shown the definite location of said wagon road from its terminus in the city of Dalles, Or., to its terminus on Snake river, and the lands of the grant of land in place made to the state of Oregon by said act of congress. That on the 23d day of June, 1869, the governor of the state of Oregon certified that the plat or map of said Dalles Military Road had been duly filed in the executive office; that it showed the location of the line of the route upon which said road was constructed, in accordance with the requirements of the act of congress, and with the act of the legislative assembly of the state of Oregon; that he had made a careful examination of said road since its completion, and that the same was built in all respects as required. That the Dalles Military Road Company forthwith filed in the office of the secretary of the interior of the United States a map or plat of the said military road, showing the definite location thereof with reference to the public surveys so far as then made, and the said certificate of the governor of the state of Oregon certifying to the construction of said road, and that on the 13th day of December, 1869, the commissioner of the general land office of the United States, by an order of the secretary of the interior, withdrew from sale the odd-numbered sections within three miles from each side of said wagon road, as delineated and shown by said map, in favor of the Dalles Military Road ·Company. That the lands described in the complaint are situated within three miles of the line of said road, as located and constructed and as shown upon said map. That they are parts of odd-numbered. sections, as shown by the public surveys, and are part of the lands granted to the state of Oregon by the act of congress of February 25, 1867. That the Dalles Military Road Company during the year 1896, and prior to the commencement of the action, duly selected, as part of its land in place, the lands described in the complaint. That the plaintiff, by virtue of mesne conveyances from the Dalles Military Road Company, has succeeded to all the right, title, and interest of said the Dalles Military Road Company in and to said lands, and is now the owner thereof in fee simple, and is entitled to the immediate possession of the same. That the defendants are in possession of the premises, and wrongfully withhold the same from the plaintiff, and have wrongfully withheld the possession thereof from plaintiff for six years last past. In the defendants' amended answer, the defendants 'T. J. Cole and J. L. Cole deny that they are in possession of the premises, and disclaim any interest therein. The defendant Emory Cole alleges that he was, and for a long time prior to the filing of the amended answer had been, the owner in fee and in possession of the land in controversy, through mesne conveyances from the state of Oregon; that the defendant and his predecessors in interest have held actual, open, notorious, continuous, adverse, and exclusive possession of said lands, under claim of ownership and color of title, at all times since July 1, 1869; that he and his predecessors in interest have made lasting and valuable improvements on said premises, and that the plaintiff has not been seised or possessed of said premises, or any portion thereof, within a period of more than 10 years last past before the commencement of this action. For a second defense the defendant Emory Cole alleges that the land in controversy was granted to the state of Oregon by virtue of the provisions of the swamp-land grant made by congress March 12, 1860, entitled "An act to extend the provisions of an act to enable the state of Arkansas, and other states, to reclaim the swamp lands within their limits, to Minnesota and Oregon, and for other purposes," and that the state of Oregon sold said lands to defendant J. L. Cole under the provisions of the state swamp-land act approved October 26, 1870, entitled "An act providing for the selection and sale of the swamp and overflowed lands belonging to the state of Oregon," by making, executing, and delivering to said J. L. Cole a deed dated March 8, 1883, a copy of which deed is set out in the amended answer. The amended answer was filed during the progress of the trial, and it was stipulated that plaintiff's reply to the original answer should be taken and deemed as a reply to the amended answer. In this reply, plaintiff admits that the defendant Emory Cole, at the time of the commencement of the action, and for six years prior thereto, had been in possession of the lands in dispute, but alleges that the possession was wrongful and unlawful, and that the defendant wrongfully and unlawfully withheld the same from plaintiff. Plaintiff further denies that the lands were granted to the state of Oregon by virtue of the provisions of the swamp-land grant, and denies that the state of Oregon sold said lands

to the defendant J. L. Cole under the provisions of the state swamp-land act, or otherwise, by making, executing, or delivering to the said J. L. Cole a deed, a copy of which is set forth in defendants' answer. Plaintiff also denies knowledge, or information sufficient to form a belief, as to whether or not the state of Oregon ever pretended to make, execute, or deliver to the said J. L. Cole a deed, a copy of which is set forth in the answer, or whether J. L. Cole ever conveyed all or any of his alleged right, title, or interest in or to said lands to the defendant Emory Cole. The cause was tried before a jury, and resulted in a verdict and judgment for the defendant Emory Cole.

Nixon & Dolph and Dolph, Mallory & Simon, for plaintiff in error.

King & Saxton and S. T. Jeffreys, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge, after stating the facts of the case as above, delivered the opinion of the court.

The errors assigned are nine in number. The first four relate to the admission of testimony on behalf of the defendant as to reputed ownership of the land in question from the year 1872 to the commencement of this action. Three witnesses were asked, in slightly different form, who was considered the owner of the land in the community in which the land was situated, between the years 1872 and 1895 or 1896. To these questions the witnesses answered, "J. L. Cole." The title of the defendant, so far as the questions now before the court are concerned, is founded upon the adverse possession of himself, and parties through whom he derived his interest, for a period exceeding the statutory time which bars an action for the recovery of land in the state of Oregon. It is provided in sections 3 and 4 of the Code of Civil Procedure of the State of Oregon that actions at law shall only be commenced within the period prescribed after the cause of action shall have accrued:

"Within ten years, action for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it appears that the plaintiff, his ancestor, predecessor, or grantor was seized or possessed of the premises in question within ten years before the commencement of the said action." Hill's Ann. Laws Or. pp. 131, 132.

Adverse possession of real property for the period mentioned in the statute is a bar to an action by the owner to recover possession; but such possession by the defendant must be actual, hostile, exclusive, open, notorious, and continuous for the whole period of 10 years. If any of these constituents is wanting, the possession will not effect a bar of the legal title. Sharon v. Tucker, 144 U. S. 533, 12 Sup. Ct. 720; Ward v. Cochran, 150 U. S. 597, 14 Sup. Ct. 230. The evidence of reputed ownership of the land in controversy, standing alone, did not tend to establish either one of these elements of possession; but where the possession of the defendant has been admitted by the plaintiff, as in this case, the evidence was admissible to prove the character of that possession. In Land-Grant Co. v. Dawson, 151 U. S. 586, 14 Sup. Ct. 458, the defendant pleaded adverse possession of the lands claimed by him for more than 10 years next before the commencement of the suit, and that the plaintiff's right to sue for the same accrued more than 10 years prior thereto. The lower court admitted testimony to the effect that the land claimed by the defendant was gen-

erally reputed to belong to him; and the supreme court held that, claiming as the defendant did by open, notorious, and adverse possession, it was competent to prove that it was generally understood in the neighborhood, not only that the defendant pastured his cattle upon these lands, but that he did so under a claim of ownership, and that his claim and the character of his possession were such that he was generally reputed to be the owner. The court said further that, while this testimony would be irrelevant in support of a paper title, it had an important bearing upon the notoriety of the defendant's possession. In other words, it was not admissible as tending to prove possession, but to show that the possession otherwise established was open and notorious. In the record before us, the defendants' reputed ownership of the land does not stand alone. It was alleged by the plaintiff in its complaint that the defendant was in possession of the land at the time of the commencement of the suit, and it was admitted in its reply to the defendants' amended answer that he had been in possession for six years prior thereto. It must be presumed that the testimony was admitted for the purpose of explaining that possession, and not to establish an admitted fact. For this purpose it was clearly admissible.

The remaining errors assigned relate to instructions to the jury. The court instructed the jury as follows:

"If, during any of the time after January 1, 1872 (the date, as I understand it, when the company's legal title became so far perfected that it might have brought its action for ejectment), until the commencement of this action, Emory Cole and his predecessors in interest, or either of them, have held adverse, actual, open, continuous, and exclusive possession of the premises in controversy for a period of ten years, a complete title was acquired, as against the plaintiff and its predecessors in interest."

It is objected to this instruction that it does not correctly define "adverse possession." Plaintiff contends that the jury should have been further instructed that such possession, to be effective, must have been hostile, notorious, and under a claim or color of title. The court did instruct the jury that the possession must be "adverse." The word "adverse," as used in this connection, is a general term, and, in legal signification, involves the element of hostility under a claim or color of title; and this would be the reasonable and natural interpretation given to the instruction by the jury. But if the plaintiff deemed the word too general, or not sufficiently definite and clear, it was its duty to point out the omission, and request an instruction that would clearly and distinctly indicate to the jury all the necessary elements of adverse possession. Without such a request, the omission cannot be assigned as error.

In Express Co. v. Kountze, 8 Wall. 353, the court said:

"It is the usual practice for the presiding judge at a nisi prius trial, in his charge to the jury, to take up the facts and circumstances in proof, explain their bearing on the controverted points, and declare what are the legal rights of the parties arising out of them. If the charge does not go far enough, it is the privilege of counsel to call the attention of the court to any question that has been omitted, and to request an instruction upon it, which, if not given, can be brought to the notice of this court, if an exception is taken. But the mere omission to charge the jury on some one of the points in a case, when it does not appear that the party feeling himself aggrieved made any request of the court on the subject, cannot be assigned for error."

So, in Tweed's Case, 16 Wall. 504, where exceptions were taken to the giving of certain instructions to the jury, and refusal of the court to give certain others, it is said by Mr. Justice Clifford:

"Reasonably viewed, it is clear that the instruction given covered every allegation of the claim, and every ground of defense set up both in the preliminary exception and in the amended answer. Instructions given by the court at the trial are entitled to a reasonable interpretation, and, if the propositions as stated are correct, they are not, as a general rule, to be regarded as the subject of error on account of omissions not pointed out by the excepting party, as the party aggrieved, if he supposes the instructions given are either indefinite or not sufficiently comprehensive, is always at liberty to ask that further and more explicit instructions may be given; and, if he does not do so, he is not entitled to claim a reversal of the judgment for any such supposed error. Courts are not inclined to grant a new trial merely on account of ambiguity in the charge of the court to the jury, where it appears that the complaining party made no effort at the trial to have the point explained."

To the same effect are Insurance Co. v. Snyder, 93 U. S. 393; Shutte v. Thompson, 15 Wall. 164; Carter v. Carusi, 112 U. S. 484, 5 Sup. Ct. 281; Railway Co. v. Volk, 151 U. S. 78, 14 Sup. Ct. 239.

The remaining errors assigned relate to instructions of the court, to which further objections are made that they do not correctly state all the elements constituting adverse possession. What has been said concerning the objections to the preceding instruction is equally applicable to these objections, and for the same reason we are of the opinion that they cannot be assigned as errors. We find no error in the record. The judgment of the circuit court for the district of Oregon is therefore affirmed.