# Southern Railway Co. *v.* Grady.

## *Injury to Passenger.*

(Decided April 15, 1915.  68 South. 346.)

1. *Carriers; Passengers; Injury; Evidence.*—The evidence examined and held to be against the verdict for the plaintiff in such sense as to require the reversal of the judgment in the trial court in refusing plaintiff's motion for a new trial on that ground.

2. *New Trial; Review; Finding of Lower Court.*—Although the appellate court will pay great regard to the judgment of the trial court as to the weight and credibility of testimony given orally in support of a verdict and judgment, yet where, after making proper allowances, it is clear that the verdict and judgment is wrong the court will reverse the cause.

3. *Same.*—In reviewing the sufficiency of evidence to sustain the verdict parts of the argument for the plaintiff tending to excite a prejudice against defendant may be looked to as partially explaining the verdict.

APPEAL from Bessemer City Court.

Heard before Hon. J. C. B. GWIN.

Action by Mrs. Lula Grady against the Southern Railway Company for damages for carrying her past the station of her destination. Judgment for plaintiff, and the court having denied defendant's motion for a new trial, defendant appeals. Reversed and remanded.

Transferred from the Court of Appeals, under the act creating said Court.

STOKELY, SCRIVNER & DOMINICK, for appellant.

GOODWYN & ROSS, for appellee.

GARDNER, J.—The plaintiff brought this action to recover for the alleged negligence of the defendant, a common carrier of passengers, in carrying her by the station of Littleton, which was her destination and to

which as a passenger on a local passenger train her transportation had been paid.

(1) The plaintiff was the only witness testifying in her behalf, and her insistence to show the alleged negligence of the defendant seems to be of a twofold character: First, that the agents or employees of the defendant negligently failed to call the station of Littleton; and, second, that they did not stop at Littleton. Upon these two the case went to the jury.

While it might be that the testimony of the plaintiff herself was sufficient to carry the latter insistence (a failure to stop at Littleton) as an issue to the jury yet in view of the fact that the plaintiff was not familiar with the names of any of the stations, as testified to by her, and the further fact that she insists that the station was not called, taken in connection with the testimony offered by the defendant, showing that Littleton was a regular stopping place; that this local train had always stopped there for the last several years; that it was a station where the conducor got his meeting orders for the other train, and the testimony of the other passengers to the effect that the train did stop at Littleton; and the further fact that the plaintiff in her testimony qualifies her statement that the train did not stop at Littleton by adding the words, "to my knowledge"—all this considered, it can hardly be here contended that this issue presented a matter of serious controversy for determination.

The plaintiff insists that no one called the station in the coach in which she was riding. The proof shows without conflict that some one was sitting on the seat beside the plaintiff, and she admits of a very limited conversation with the party. The flagman testified that on this occasion he called the station of Littleton plainly two or three times, and in a voice loud enough to be

heard in the coach in which the plaintiff was riding, and that he remembers it distinctly, saying, "I remember distinctly calling it three times, and where I was each time." The ticket collector testified that he also called the station by calling into the car after the people had gotten off, to see if there were any more to get off. These witnesses stated that they remembered this so well because of the fact that after they had gotten out some distance (a mile or two) from Littleton it was discovered that this plaintiff had been carried by her station, and the conductor called their attention to the fact and proceeded to take the names of some of the passengers as witnesses as to whether or not the station was called; and the further fact that they made arrangements and sent the plaintiff back on the next train, which they met at Cordova 12 miles below. While these two witnesses may be said to have been more or less interested, yet upon every point at issue in this case, they are corroborated by the testimony of four passengers, who, so far as the record shows, were entirely disinterested.

Mr. Dobbs, a merchant at Berry, Ala., was a passenger in the same coach. He was in no manner connected with the defendant and wholly without interest. He remembered the occasion as he said he was trying to locate how far down the road he had gotten, and that just after the train passed Littleton, the conductor came in and asked if he remembered hearing the station called and took down his name. He says: "The train did stop at Littleton. The flagman came through the coach and called the station. He said 'Littleton' and hollered it three times if I mistake not."

Mrs. McNiece, a sister of Mr. Dobbs, and sitting beside him on this occasion, testifies to the same effect, and stated postively that the train did stop its usual time, and that the station was called by the flagman in

that coach sufficiently loud to be heard. Her attention was also directed to this occurance by the conductor taking her name and asking her the question.

The defendant also offered the testimony (admitted as such by the plaintiff) of Mrs. Bartlett and a Miss Dickerson, the former having once lived at Littleton, and therefore familiar with the station, and the latter being her companion on this trip. They testified that they were sitting on the seat just in front of the plaintiff, and that the plaintiff was talking to a gentleman who was sitting on the seat with her; that after the train left Littleton (having stopped its usual time) they heard the conductor inquire of plaintiff as to why she did not get off. The conductor also inquired of them as to whether or not they had heard the station called. All these facts impressed the occasion upon their minds.

We do not find the evidence of the witnesses offered by the defendant at all shaken or the weight thereof in the least diminished by cross-examination.

(2) The jury found in favor of the plaintiff. Motion was made for a new trial upon the ground that the verdict was contrary to the great preponderance of the evidence, which motion was overruled; and this ruling constitutes one of the assignments of error. The assignment is treated by counsel for appellant in their brief (a copy of which was duly served on counsel for appellee) at much length, and as presenting the question of prime importance in this case, but it appears to have been given scant consideration by appellee's counsel in their argument here. "We are not unmindful of the rules by which this Court is governed in the determination of questions of this character. The trial judge, who hears the witness and sees their demeanor on the stand, has a better opportunity than we can have to judge the weight and credibility of oral testimony, and

on appeal great respect is paid to his judgment. But this Court has not renounced its duty nor neglected its power to revise the verdicts of juries and the conclusions of trial judges on questions of fact, where, in our opinion, after making all proper allowances and indulging all reasonable intendments in favor of the Court below, we reach a clear conclusion that the finding and judgment are wrong."—*Twinn Tree Lbr. Co. v. Day*, 181 Ala. 565, 61 South. 914.

In the instant case, as corroborated of the testimony of the employees of defendant, there appears the postive evidence of four disinterested witnesses, passengers on the same coach with the plaintiff. Opposed to this was that of the plaintiff alone, which, however, is easily reconcilable with the evidence of the other witnesses upon the theory that through her own inattention or heedlessness she did not hear the station called, and therefore may be entirely honest in her insistence here.

(3) One of the assignments of error on this appeal relates to certain argument of counsel for plaintiff in his closing speech, it is unnecessary that we determine whether or not in the ruling of the court on this question there was error to a reversal. The portions of the argument shown in the record, however, may properly be looked to for at least a partial explanation of the verdict rendered in this cause. It cannot be denied that it had some tendency to excite the predjudice of the jury against the defendant. We recognize that upon questions of this character much deference is to be accorded the views of the trial judge, and that the powers of this Court in this regard should be exercised with the greatest caution. Courts are organized that justice may be evenly administered, and if after allowing all reasonable presumptions in favor of the correctness of the verdict of the jury, the preponderance of the evi-

dence against the verdict is so decided as to involve the conviction that it is wrong and unjust, then it is the duty of the court to so exercise its power and grant the new trial.

After a most careful review of the evidence in this case, we are of the opinion that no rational mind, unbiased and unswayed by prejudice or passion, could have reached a conclusion so contrary to the overwhelming weight of the evidence in this case that the station was not properly called, or that the train did not make its regular and ample stop thereat.—*So. Ry. Co. v. Herron*, 189 Ala. 662, 61 South. 627. We are clear to this conclusion and the judgment of the Court below will be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and SAYRE, JJ., concur.