# Gibson v. Gaines, et al.

### Ejectment.

(Decided June 30, 1916.   Rehearing denied January 18, 1917.
73 South. 929.)

1. **Adverse Possession; Hostile Character; Disputed Boundaries.**—Where adjoining land owners claimed and held the land to a line which they believed to be the true line, not intending to hold beyond the true line such claim and possession of the one is not adverse to the rights of the other if the line was not in fact the true line; however if they intended to hold to that line regardless of whether or not it was the true line such holding was adverse.

2. **Same; Declaration of Predecessor in Title.**—One claiming by adverse possession can give in evidence declaration of claim of ownership made by his ancestor and plaintiff's ancestor while they were in possession, to explain the nature of the possession.

3. **Same; Rebuttal.**—Where the defendant claimed by adverse possession and had given in evidence declarations of his ancestors and of the ancestors of plaintiff to show the nature of the possession, plaintiffs can rebut by proof of contradictory declaration made while declarants were in possession since such declarations are the best evidence available to rebut such evidence on the part of the defendant.

4. **Same; Life Tenant; Transfer of Possession.**—On the issue of adverse possession, declarations of a life tenant while in possession are not admissible to the prejudice of the remaindermen, nor are declarations made by a predecessor in title after he has parted with the possession.

[Gibson v. Gaines, et al.]

5. **Evidence; Declaration; Rebuttal.**—Where the court admitted declarations made by declarant after he had parted with possession it was permissible to rebut that evidence by the testimony of a third party denying the declaration and detailing the conversation which took place.

6. **Witnesses; Examination; Striking Testimony.**—Where a witness stated that it was general rumor in the settlement that defendant's predecessor in title owned the land on top of the hill, such answer was properly stricken because not responsive to the question and because of the indefinite location of the land.

7. **Appeal and Error ; Invited Error; Evidence.**—Where the defendant had given in evidence declarations made by plaintiff's predecessor in title made after he parted with the title he cannot put the court in error for admitting in rebuttal similar declarations made by his predecessors.

APPEAL from Walker Circuit Court.

Heard before Hon. J. J. CURTIS.

Ejectment by S. J. Gaines and others against H. P. Gibson. Judgment for plaintiffs, and defendant appeals. Affirmed.

The facts sufficiently appear. The following charges were refused to defendant:

(2) The court instructs the jury that if you believe plaintiffs, or those with whom they may be in privity, and under whom they claim, stood by and saw other parties delivering title to the lands in question, cultivating and improving them for a period of ten years or more when there was no impediment to bringing suit and recovering them, and during the time made no claim in the land, this claim becomes stale, and they cannot recover the land, although they have the legal title to it, but for their delay in bringing suit or claiming the land.

(3) If the father of defendant had bought lands from S. J. Gaines, deceased, and put a fence on what he believed to be the true line, and claimed to own the land to the fence and sold the land, or a part of it to defendant in this case, putting him in possession of said lands west of said fence, and defendant had continued in continuous possession thereof since 1884, although the line may have been erroneous, and said fence may not have been the true line, yet the holding of defendant's father and of defendant is adverse to that of S. J. Gaines, and those claiming under him as plaintiffs in this case; and if the jury believe from the evidence that such claim and possession has so existed for said time, they will find for defendant.

ERNEST LACEY and RAY & COONER, for appellant. BANKHEAD & BANKHEAD, for appellee.

THOMAS, J.—The judgment entry states that the defendant disclaimed as to the lands east of the wire fence and pleaded the general issue as to the other lands sued for. On the trial the issue of fact was submitted to the jury, and from a verdict and judgment for plaintiffs defendant appeals, here assigning ruling on evidence and the refusal of requested written charges as error.

It was admitted that the lands in question were patented to H. P. Gaines, who held the same until his death in January, 1865, and that thereafter deed by all his heirs at law was made to George S. Gaines; that on May 6, 1885, said last grantee conveyed said lands to his wife, Frances A. E. Gaines; that she died March 10, 1891; that George S. Gaines died on December 22, 1910, leaving plaintiffs as all his heirs at law and next of kin. From March 10, 1891, to the date of his death, George S. Gaines held as life tenant the lands of his deceased wife, Frances A. E. Gaines.

Plaintiff sought to show that he so held the land in question, and that as remaindermen they were not entitled to the possession thereof till the death of their father, George S. Gaines; that defendant, or his grantee, never had possession of the lands west of the fence until a short while before the suit was brought, and when defendant erected a wire fence around the same; that the defendant's father and grantor, Dan J. Gibson, never had possession of the lands in question.

The defendant sought to show that for more than 45 years his immediate predecessor in estate had the actual possession of the questioned tract of land west of the fence and held it till he sold it and delivered possession thereof to defendant in 1884, and that thereafter, up to and at the time of the trial, defendant had adverse possession of the same.

(1) Thus the question of possession and its character was a material inquiry. The question was whether the land on each side of the line where the fence stood was held by the respective owners, believing that fence line to be the true dividing line between them and intending to hold only to the true line, or whether they respectively intended to hold to that line without regard to whether it was the true line. That is to say, if the Gibsons and the Gaineses respectively claimed and held the land to that fence line, or the line where the fence was, believing it to be the true line between their lands and not intending to claim

and hold beyond the true line, and that line was not the dividing line between their lands, then such claim and possession of either, under mistake of fact as to the true line, would not be a claim and possession adverse to the right of the other coterminous landowner. If, on the other hand, Dan J. Gibson claimed and held possession of the lands in question west of that fence line and up to the line where the fence stood, to the time of the death of Francis A. E. Gaines (March 10, 1891), and at the time of his conveyance to appellant in 1884, and during said time George S. Gaines held the possession of the land on the east side of and to the point where the fence stood, and thereafter their immediate successors in title respectively continued to so claim and hold the land till the death of Mrs. Frances A. E. Gaines, and each of said coterminous landowners held to that line as the true line between them, then such claim and continuous possession of each would be adverse to the other.—*Smith v. Bachus,* 195 Ala. 8, 70 South. 261.

The trial court, at defendant's request, correctly submitted for the consideration of the jury the fact and character of the possession of the respective coterminous landowners.

There was no error in refusing written charges 2 and 3, requested by defendant.—*McLester Building Co. v. Upchurch,* 180 Ala. 23, 60 South. 173.

(2) Defendant, in setting up his claim of adverse possession, was allowed to give in evidence declarations of claim of ownership by Dan J. Gibson, defendant's ancestor and immediate predecessor in title, and of George S. Gaines, plaintiffs' ancestor and predecessor in title, they being at the time coterminous landowners. Such evidence tended to show the character of possession by which the lands in dispute were then held. When a defendant is claiming title by adverse possession, reputation of ownership may be given in evidence.—*Maxwell Land Grant Co. v. Dawson,* 151 U. S. 586, 14 Sup. Ct. 458, 38 L. Ed. 279; *Johnson v. Rhodes,* 62 Fla. 220, 230, 56 South. 439; *Sparrow v. Hovey,* 44 Mich. 63, 6 N. W. 93; *Knight v. Knight,* 178 Ill. 556, 53 N. E. 306; *Eastern Oregon Land Co. v. Cole,* 92 Fed. 951, 35 C. C. A. 100; *Smith v. Bachus, supra.* Such declarations are not admissible to show the quantum of estate, but are admissible to explain the nature of the possession.—*McBride v. Thompson,* 8 Ala. 650; *Gary v. Terrill,* 9 Ala. 206; *McLeod v. Bishop,* 110 Ala. 640, 20 South. 130; *Holman v. Clark,* 148 Ala. 286, 41 South. 765; *Pel-*

*ham, Sitz & Co. v. Herzberg-Loveman D. G. Co.,* 194 Ala. 237, 69 South. 881; 1 Greenl. on Ev. § 108.

(3) Defendant having given in evidence such declarations of the coterminous landowners, as tending to show the claim of ownership of the Gibsons of the lands in question to the fence line, or the line on which the fence was later erected, and to show a recognition by George S. Gaines and Frances A. E. Gaines of such claim of ownership to said line, it is clear that this tendency of the evidence was subject to be rebutted by evidence tending to show conflicting declarations of ownership, of such respective coterminous landowners, made while they were in possession of the respective tracts of land on both sides of the line in dispute. It is the best evidence obtainable; it is a part of the res gestæ of possession.

It might be impossible for a plaintiff to adduce proof of denial of the particular declaration given in evidence where the defendant founds his title on claim of adverse possession, whereas there might be abundant evidence to show contrary declarations, made by such coterminous landowners in possession, as to the character of the possession.

In *Quinn v. Eagleston,* 108 Ill. 254, it was held that the planting of a hedge, in from the line of the land, was an equivocal act; that it might be interpreted as a dedication to the public, to that extent, or as setting the hedge on the true line; that "the declarations of E., when he was the owner and in possession of the land, explanatory of his intention in leaving the strip of land open, we think were properly admitted * * * as a part of the res gestæ, as accompanying the acts of throwing the land open and keeping it open."

In *Rankin v. Tenbrook,* 6 Watts (Pa.) 390, the court said: "In the frontier settlements, written leases were at one time not very common, and when it has been material to prove long possession by successive tenants who are dead. or who have removed to some Western state, it has been the constant practice to prove by some persons, who lived near the property, who were the successive tenants, and that they openly stated themselves to be tenants. * * * What a man says when he does a thing shows the nature of his act, and is a part of the act; it determines its character and effect."

Mr. Greenleaf says: "The typical case is that of conduct to which it is desired to attach legal significance, but in which there

is intrinsically none, until its whole tenor is otherwise made definite; and it is by words accompanying the conduct that this tenor is more fully and precisely defined. The words are not used testimonially; for example, where it is asked whether A.'s possession is adverse, i. e., under claim of ownership, his utterance, 'This land is mine, for I bought it of B.,' is not used as evidence that it is his and that he did buy it of B., but merely as giving to his occupation an adverse complexion and significance."—1 Greenl. Ev. (16th Ed.) p. 190, § 308.

The trial court admitted and limited such testimony by proper instructions to the jury.

(4) During the life tenancy of plaintiff's father, George S. Gaines, no act or declaration of his could prejudice the rights of the remaindermen.—*Hall, et al. v. Condon, et al.,* 164 Ala. 393, 51 South. 20; *McMichael v. Craig,* 105 Ala. 382, 16 South. 883. So of declarations of Gibson after he had parted with the possession of the land.—*Anniston Co. v. Edmondson,* 145 Ala. 557, 40 South. 505.

Defendant's entry on the lands purchased by his father was in 1884, and the coterminous landowner, Mrs. Frances A. E. Gaines, died in 1891. Thus the bar of the statute was not complete between those dates. Defendant sought, however, to establish his claim of adverse possession by the holding of his father, Dan J. Gibson, against George S. Gaines prior to May 6, 1885, and thereafter, against Mrs. Frances A. E. Gaines to the date of her death on March 10, 1891. To this end defendant sought to show the claim and possession of the land in question by his father, Dan J. Gibson, on the one hand, and to show acquiescence in his claim of ownership and possession by George S. Gaines on the other. Such declarations of Gibson and Gaines while in possession as the respective coterminous owners of the land were competent, as we have shown, as a part of the res gestæ of the possession; their subsequent declarations and claims of possession, after their possession was surrendered and changed, were but hearsay declarations.

(5) The defendant improperly gave in evidence declarations as to the ownership of the lands, or a part thereof, made by George S. Gaines, six or seven years before the trial, after the conveyance of the same to his wife and after her death, while he held the same by courtesy for life. Yet it was permissible to rebut this testimony of A. J. Kimbrell by Mrs. Nellie Gaines

(the second wife of George S. Gaines), who denied that such admissions were made by Mr. Gaines, and to allow her to detail what conversations really took place concerning the lands in question. For the same purpose the lease to Mrs. Gibson was properly admitted in evidence.—5 Jones on Ev. § 873.

(6) The court committed no error in the ruling excluding the answer of witness Kimbrell that "it was a general rumor in the settlement that Dan Gibson owned the land on top of the hill." It is true that the witness had just spoken of the land in question, and that Dan Gibson was in the possession of the land at the time the wire fence was built on top of the mountain; yet the question did not call for the general rumor in the county where the land in question lay, and part of the witness' reply was not only not responsive to the question, but was entirely indefinite as to what land "on top of the hill" was known in the settlement to be "owned" by Dan Gibson. The character of the possession of the specific land in question, under defendant's claim of adverse possession, was the pertinent inquiry.

(7) The plaintiffs, in rebuttal, offered the testimony of Mr. and Mrs. Thompson, to the effect that Dan Gibson came to their home after he had conveyed the questioned lands to defendant, and made certain statements that tended to deny his claim of ownership and possession of the lands before his sale to defendant. These statements made by a party out of possession are no part of the res gestæ, and were hearsay. The court overruled the defendant's objections thereto, and his motions to exclude, gave due exceptions to such rulings, and instructed the jury that this testimony could be considered only as it related to "the possession of Dan Gibson and to show whether or not that possession was intended to be adverse up to the point to where he was holding, regardless of where the true line ran." Appellees insist that what Gibson told the Thompsons tended to dispute the evidence of defendant's witness, that Gibson adversely held and claimed to own the land west of the fence, and that the plaintiff may controvert such illegal and irrelevant evidence by proof of declarations and claims inconsistent with the admissions of George S. Gaines so introduced by the defendant. To establish his claim of adverse possession defendant was permitted to prove such declarations of Gaines, after his ownership in fee of the land had ceased to exist, by witness S. P. Gaines and Jim Taylor. Such declarations in the nature of admissions

by the life tenant, Gaines, were hearsay as to the remaindermen, the plaintiffs in this cause.—*McMichael v. Craig, supra; Hall v. Condon, supra.*

The defendant, having introduced the hearsay evidence of the defendant and thereby invoked a ruling of the trial court in favor of the admissibility of such evidence, cannot now put the trial court in error for permitting similar evidence offered by the other side. The defendant had the court to rule that such hearsay evidence was admissible, and he cannot reverse the trial court for making a ruling on the other side, consistent with the one invoked by him. The point was not developed in the case of *Bank of Phoenix City v. Taylor,* 196 Ala. 665, 72 South. 264. Moreover, the case was reversed for the admission of the first illegal evidence, and there was no room for the application of the rule as laid down in the case at bar.

The judgment of the lower court is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.