(93 South. 837)

## F. W. BROMBERG & CO. v. NORTON.
### (6 Div. 461.)

(Supreme Court of Alabama. June 8, 1922. Rehearing Denied June 30, 1922.)

1. Appeal and error �köœ882(15)—Defendant bound by charge submitting only question of amount of damage.

Where defendant induced the court to charge that the only question for ascertainment was the amount of damages which plaintiff could recover, no error could be predicated on the refusal of defendant's instructions that, if the jury believed the evidence, the verdict should be for defendant.

2. Evidence ⊙ôœ113(10)—Refusing plaintiff's evidence of jeweler's price to duplicate ring not error.

In action for failure to return a diamond ring, where defendant's witness had stated that old mine cut diamonds had been offered him recently in Philadelphia and that the local value of such diamonds was the same as in other markets, where the value was approximately $125 per carat, refusing plaintiff's evidence of an offer by a New York jeweler to duplicate her ring at $1,375 was not error, it not being certain that the offer was of like cut and quality as the diamonds set in the lost ring.

3. Evidence ⊙ôœ474(19)—Permitting owner of ring to give opinion as to its value aside from keepsake not error.

In an action for failure to return a diamond ring, permitting plaintiff to give an opinion of the value of the ring aside from its fanciful or keepsake value to her or her family was not error.

4. Bailment ⊙ôœ32—Evidence of sentimental value of ring properly excluded.

In an action for failure to return a diamond ring, evidence of its sentimental value was properly excluded.

5. Bailment ⊙ôœ33—Instruction that sentimental value of ring was not to be considered in estimating damage from its loss proper.

In action for failure to return a diamond ring, notwithstanding that evidence of sentimental value was excluded from the jury, the recurrence of the question during trial and argument of plaintiff's counsel that the ring was the wedding ring of plaintiff's grandmother, etc., justified an instruction that plaintiff could not recover for its sentimental value.

6. Bailment ⊙ôœ31(3)—Judgment as to value of ring not sustained by evidence.

In an action for failure to return a diamond ring, evidence held not to sustain judgment in the amount fixed by the jury.

Appeal from Circuit Court, Jefferson County; C. B. Smith, Judge.

Action by Fannie Mae Norton against F. W. Bromberg & Company for damages for failure to return a diamond ring. From a

judgment for plaintiff, defendant appeals. Reversed and remanded conditionally.

Charges 1 and 2, requested by and refused to the defendant, read as follows:

(1) The court charges you that if you believe the evidence your verdict must be in favor of the defendant.

(2) The court charges you that if you believe the evidence in this case you cannot find for the plaintiff under the third count of the complaint.

Lange & Simpson, of Birmingham, for appellant.

Where prejudice results from the presentation of evidence which is improper and calculated to create bias in the minds of the jury, a new trial should be granted. 182 Ala. 561, 62 South. 199. Repeated questions and statements by an attorney, tending by inference and innuendo to acquaint the jury with evidence known by him to be inadmissible, or held inadmissible by the trial court, should be met by a reversal of the case, where harm results. 11 Ala. App. 644, 66 South. 942; 175 Ala. 338, 57 South. 876, Ann. Cas. 1914C, 1037; 183 Ala. 273, 61 South. 80, Ann. Cas. 1916A, 543; 104 Ala. 471, 16 South. 538; 74 Ala. 286; 159 Ala. 52, 48 South. 662; 108 Ala. 205, 19 South. 791; (Ky.) 107 S. W. 303; 69 Ohio St. 438, 69 N. E. 663, 100 Am. St. Rep. 682; 119 Wis. 326, 96 N. W. 815; 113 Wis. 123, 87 N. W. 1101, 89 N. W. 113; 40 Wash. 289, 82 Pac. 271; 78 Pac. 202; 22 Colo. 11, 43 Pac. 124; 221 Ill. 591, 77 N. E. 1112, 6 Ann. Cas. 220; 138 Ky. 274, 127 S. W. 993, Ann. Cas. 1912A, 1291; 169 Ill. App. 269; 143 Ky. 581, 136 S. W. 1010; 151 Ky. 136, 151 S. W. 408; 188 Mo. App. 417, 174 S. W. 203; 152 Wis. 459, 140 N. W. 56, L. R. A. 1918E, 1052; 160 Iowa, 722, 141 N. W. 334; 145 App. Div. 241, 130 N. Y. Supp. 29; 165 N. C. 587, 81 S. E. 776; 143 App. Div. 7, 127 N. Y. Supp. 506. Where the fact that the verdict of the jury is not based upon the evidence is clear, a new trial should be granted. 144 Ala. 387, 39 South. 590, 6 Ann. Cas. 929; 33 South. 8; 192 Ala. 515, 68 South. 346; 87 South. 85; 12 Ala. App. 324, 66 South. 914; 201 Ala. 613, 79 South. 45; 206 Ala. 147, 89 South. 732.

Hugo L. Black, of Birmingham, for appellee.

The owner of an heirloom has the right to recover its particular value to him from one who has lost or destroyed it by his negligence. 60 Okl. 32, 158 Pac. 1144, L. R. A. 1917D, 495; (Mo. App.) 183 S. W. 1127; 146 Ala. 412, 41 South. 752. Where there is evidence showing that property lost or injured has no market value, the measure of the owner's damage is its value to him. 121 Ala. 368, 25 South. 712, 53 L. R. A. 690; 15 Ala. App. 241, 73 South. 135; 146 Ala. 412, 41 South. 752, 8 L. R. A. (N. S.) 369, 119 Am. St. Rep. 41, 9 Ann. Cas. 1143. The owner of property may testify as to its value, without any other qualifications. 143 La. 207, 78 South. 469; 121 Ala. 368, 25 South. 712, 53 L. R. A. 690; 191 Ala. 72, 67 South. 833, Ann. Cas. 1917C, 878. Where something transpires during the trial of a case that would result in so prejudicing the jury that a fair verdict could not be obtained, counsel should take appropriate action to secure a mistrial or a continuance, and not speculate on what the jury might do and later make a motion for a new trial. 183 Ala. 275, 61 South. 80, Ann. Cas. 1916A, 543; 85 Conn. 111, 81 Atl. 969; 3 C. J. 864; 95 Ala. 284, 11 South. 253; 152 Ala. 565, 44 South. 563, 126 Am. St. Rep. 55; 126 Ala. 95, 27 South. 760; 107 Ga. 157, 33 S. E. 191; 187 Ind. 420, 116 N. E. 417, 119 N. E. 716; 79 Conn. 477; 65 South. 957.

THOMAS, J. The evidence is without conflict that the loss of the ring was due to larceny by a porter in the employ of defendant, who, as bailee, was liable for negligence. During the trial, defendant's counsel stated to the court that he did not care to "avail himself of any defense regarding liability." The court instructed the jury that—

"Relying on the statement of counsel, * * * the only question left for your consideration * * * is * * * the amount of damages which the plaintiff is entitled to recover. * * *"

Thereafter defendant requested in writing affirmative charges 1 and 2, which were refused.

[1] The assignments of error are predicated on failure to grant defendant's motion for a new trial, grounds of which were the refusal of aforesaid charges. Having induced the court to charge the jury that the only question of fact for ascertainment was the amount of damages which plaintiff was entitled to recover, no error can be predicated on refusal of the contrary instructions contained in said charges. Talley v. Whitlock, 199 Ala. 28, 73 South. 976; B. R. L. & P. Co. v. Hunt, 200 Ala. 560, 76 South. 918; Hooper v. Birchfield, 115 Ala. 226, 233, 22 South. 68.

[2] The defendant's witness Rubenstein, a jeweler, without objection testified that old mine cut diamonds had been offered him for sale "recently in Philadelphia"—in August, 1920; that Birmingham people buy most of their diamonds in New York, Philadelphia, and Chicago, and that the Birmingham market is based on the market in said places; that old mine cut diamonds are scarce and their value in Birmingham is the same as in other markets, where the reasonable market value of such stones, size from a quarter to a half carat, is from $100 to $125 per carat wholesale price; at retail from $150 to $175 per carat; that of stones half a carat size smaller would be of less value. The witness further testified that the value of two stones

weighing a quarter of a carat each and one weighing about $35/100$ of a carat, "old mine cut, silver cape, commercial white, without flaws on the Birmingham market, would be about $125 a carat"; if of about two carats would be worth about $200. This testimony was admitted after the introduction of evidence tending to indicate the kind, size, quality, and color of the diamonds in question. Thereafter, in her rebuttal, plaintiff was asked: "Is it true that Tiffany in New York offered to duplicate that ring with a $75/100$ and two $65/100$ carat stones, like you had in the other one for .$1,375?" to which defendant's objection was sustained. Whereupon plaintiff's attorney stated that he offered this evidence on the theory that defendant had proved by Mr. Rubenstein that he "got an offer on some rings in Philadelphia." The foregoing evidence indicates that there was no error in refusing to permit the question to be answered. It is urged by appellee that such evidence was competent, under decisions to the effect that where one party had introduced hearsay evidence, the trial court may permit the other party to introduce evidence of a like nature and to a contrary import. Gibson v. Gaines, 198 Ala. 583, 73 South. 929; Ala. Fuel & Iron Co. v. Bush, 204 Ala. 658, 86 South. 541. See analogy in Bank of Phœnix City v. Taylor, 196 Ala. 665, 72 South. 264. The testimony of Mr. Rubenstein was not such as to warrant the question and answer sought, it being by no means certain that such offer, if made by Tiffany, was of like kind, condition, and quality as the diamonds set in the lost ring, or were the same on which Rubenstein had a price named to him in Philadelphia, about August, 1920, or that such was the price of the plaintiff's diamonds when the ring was stolen.

[3, 4] The plaintiff, called as a witness in her own behalf, was asked by her counsel: "What in your judgment was the value of the three diamonds and the ring in June, 1919?" and defendant objected. During the discussion that ensued the court inquired: "You mean the reasonable market value?" and the attorney replied: "No sir, I don't, [I] mean the value to her." The objection being sustained, attorney for plaintiff offered "to show the fact that this ring is an heirloom and handed down from three generations to this lady and cherished as an heirloom. We offer to show that as to the separate facts." Objection being sustained plaintiff's attorney urged the matter by saying: "We except. We offer to show by the lady that the peculiar value of the ring to her, it being by reason of the sentiment attached to it, being an heirloom." Objection being sustained to this course of examination of the witness or attempt to do so to the end stated, and exception reserved, the witness was asked: "What in your judgment was the reasonable market value of the ring

in Birmingham in June, 1919?" and answered: "The market value the best of my knowledge, of the ring, would be between $1,500 and $2,000."

Without objection the witness was permitted to testify that while working in a jewelry store she had "seen diamonds weighed," had "seen rings priced in the windows in Birmingham," had "looked at rings and noted prices" thereof; was around jewelry windows and noted every jewelry store she passed to get new ideas from such windows; knew of people buying rings in Birmingham and the prices paid and the generally reported price of diamonds in that market. Cross-examined, she said that the longest she had worked "in a jewelry store was a little over a month," and had worked in such a store "off and on from middle of December until June, and a month last summer during part of July and August"; had seen "old mine cut stones"; knew "practically what one is"; could not tell "by looking at any stone what cut it was."

The witness H. Y. Webb, called as an expert, testified that he was engaged "in the wholesale diamond business in Birmingham" at the time of the loss of plaintiff's ring, and was acquainted with the price of diamonds in that market; that he knew the different styles and cuts of such stones, and gave as his opinion that "old mine cuts" lack "in brilliancy compared to the modern cutting." Concluding his examination the witness said: "The only way * * * [an] old mine cut stone is merchantable is to recut it and in recutting you lose an average of about 40 per cent.—25 per cent. to 50 per cent. in weight." On his cross-examination he stated: "I cannot state that an old mine cut stone has no value. * * * In reality it has no market value. It is worth what you can get for it." Being re-examined he declared that a perfect silver cape could be bought at $375 to $475 per carat in the best cutting: but that in old mine cuttings it is hard to figure; that after paying the cost of recutting and reducing, which is $35 to $50 per carat on the weight before it goes into the cutting, what is left would be the fair market value. He concluded the matter with the statement: "There is no rule by which you can figure the depreciation in cutting down an old mine cut stone, but experience shows the general result to be a depreciation of 25 to 50 per cent."

The foregoing was the basis for a reasonable inference by the jury, though finding that this article of wearing apparel may be considered as having no market value in the general acceptation of such term; yet it had a value to its owner, aside from its fanciful or sentimental value as an heirloom or keepsake, of which she and other witnesses, knowing the fact, could testify. The doctrine that the owner of such a chattel is

qualified, by reason of that knowledge and relationship, to give an estimate of its value has been frequently discussed. It is the better opinion of the courts that the owner of certain chattels has a "general, though not expert, knowledge of the value" which, for the purpose of estimating damages, may be considered as having no market value, and that, having such general knowledge of the value of the article, he "may testify as to his opinion of such value" to its owner. L. R. A. 1917D, 495, 507, note. The cases in which the rule has been applied are generally such as involved the value of wearing apparel, household goods, or furniture; and the effect of our decisions is "that the fanciful or sentimental value must not be considered." B. R. L. & P. Co. v. Hinton, 157 Ala. 630, 47 South. 576 (household goods); Cooney v. Pullman Co., 121 Ala. 368, 25 South. 712, 53 L. R. A. 690 (satchel); Sou. Exp. Co. v. Owens, 146 Ala. 412, 41 South. 752, 8 L. R. A. (N. S.) 369, 119 Am. St. Rep. 41, 9 Ann. Cas. 1143 (manuscript); Kates Trans. Co. v. Klassen, 6 Ala. App. 301, 59 South. 355 (watch and trunk); Buerger v. Mabry, 15 Ala. App. 241, 73 South. 135 (household goods and furniture); Whitehead v. State, 16 Ala. App. 427, 78 South. 467 (automobile); L. R. A. 1917D, 507; Southern Express Co. v. Owens, 146 Ala. 412, 41 South. 752, 8 L. R. A. (N. S.) 369, 119 Am. St. Rep. 41, 9 Ann. Cas. 1143; 17 Cyc. 113, 114. This is the logical result of the statutory provision that—

"Direct testimony as to market value is in the nature of opinion evidence. One need not be an expert or dealer in the article, but may testify as to value, if he has had an opportunity for forming a correct opinion." Code 1907, § 3960; Ala. Power Co. v. Keystone Lime Co., 191 Ala. 58, 72, 67 South. 833, Ann. Cas. 1917C, 878; Jackson v. State, 17 Ala. App. 197, 84 South. 394.

And of our decisions to the effect that one "who is familiar with (such property) may testify as to its value without other qualification." Cooney v. Pullman Co., supra; Ala. Power Co. v. Keystone Lime Co., supra; Whitehead v. State, supra. Of this it was said:

"While we treat this case upon the idea that the market value of the goods at the time of destruction was the criterion of their value, and affirm it upon the idea that the jury had some evidence of said market value, yet we do not mean to hold that the marketable value should be the test as to articles of the character in question, or that the owner could not have shown the cost of same as a factor in arriving at their value. Household goods, such as furniture, bedding, and wearing apparel, kept for use and not for sale, and which have in fact been used, may have a real intrinsic value to the owner, and yet little or no market value. In some instances it would be difficult, as well as expensive, to replace them, and yet; if put upon the market there would be little or no demand for them, and in such cases the value should be fixed or ascertained in some rational way, other than by showing what they would bring in a particular market or if hawked off by a secondhand dealer." B. R. L. & P. Co. v. Hinton, 157 Ala. 632, 47 South. 576.

It follows that there was no error in permitting Miss Norton to give an opinion of the value of the ring, aside from its fanciful or keepsake value to her or her family; and that the subject of the suit was the wedding ring of plaintiff's grandmother was beside the issue. Prejudicial error would have been committed had not the court excluded evidence of the sentimental value of the ring.

[5] When the evidence was closed, in his opening argument plaintiff's counsel, over the objection of defendant's counsel, was permitted to say: "Now, gentlemen of the jury, if this was the wedding ring of her * * * or the engagement ring of her grandmother * * *"—notwithstanding objections and exceptions theretofore made by defendant to evidence of, or tending to show, the fanciful or keepsake value of the ring. Plaintiff's counsel during the trial had insisted that the value of the ring as an heirloom was a proper element of damage that might be considered by the jury, and the court excluded much of this evidence. As to its fanciful or keepsake value, the court properly instructed the jury that it should have no part in the fixing of damages in the verdict—a verdict that was conceded to be for plaintiff in some amount. The recurrence during the trial of the question of evidence of sentimental value indicates the damaging effect of a ruling thereon contrary to defendant's insistence, and the importance of the action and charge of the court on this controverted question throughout the trial to the foregoing argument, to which objection was duly made and invocation for affirmative action by the court. Birmingham Nat. Bank v. Bradley, 108 Ala. 205, 19 South. 791. Notwithstanding the refusal of the court to exclude this argument of plaintiff's counsel, the court instructed the jury that:

"The measure of plaintiff's damages * * * would be the reasonable market value of the ring at the time it was lost, with 8 per cent. interest thereon up until the present time. * * * The market value of the ring is a question of fact under all of the evidence for you to decide. The law in this state is that the plaintiff could not recover for the sentimental value of the ring; she could only recover for the reasonable market value" with interest for the time indicated.

[6] The rule of new trial was recently applied by this court as follows:

"We are of course mindful of the well-established rule that a trial judge who sees the wit-

nesses upon the stand has the better opportunity to judge the weight and credibility of oral testimony, and on appeal great respect is paid to his judgment. The following quotation from Southern Ry. Co. v. Grady, 192 Ala. 515, 68 South. 346, is applicable here: 'We recognize that upon questions of this character much deference is to be accorded the views of the trial judge, and that the powers of this court in this regard should be exercised with the greatest caution. Courts are organized that justice may be evenly administered, and if, after allowing all reasonable presumptions in favor of the correctness of the verdict of the jury, the preponderance of the evidence against the verdict is so decided as to involve the conviction that it is wrong and unjust, then it is the duty of the court to so exercise its power and grant the new trial.' "

That is to say—

" * * * The verdict is so contrary to the overwhelming weight of the evidence as to call for a reversal of the cause on account of the error of the trial court in overruling the motion for a new trial." Cudd v. Bentley, 204 Ala. 586, 587, 87 South. 85, 86; Cobb v. Malone, 92 Ala. 630, 633, 635, 9 South. 738; Fries v. Acme White Lead Works, 201 Ala. 613, 79 South. 45; N. C. & St. L. Ry. v. Crosby, 194 Ala. 338, 348, 70 South. 7; B. R. L. & P. Co. v. Dennison, 163 Ala. 46, 50 South. 316; B. R. & E. Co. v. Mason, 144 Ala. 387, 392, 39 South. 590, 6 Ann. Cas. 929.

Under the appropriate ground for new trial, questions of paramount importance in ascertaining the value of the lost ring are size, number, and character of stones set therein, and the style, cutting, and setting. The evidence adduced by plaintiff was that the larger of the three stones was about $75/100$ of a carat, and the other two about $65/100$ of a carat. There was other evidence tending to show the total weight of the stones to have been $25/100$ carats. Of the witnesses who testified for the defendant, his clerk said that plaintiff's diamonds were, one stone slightly over and the other two slightly under $23/100$ of a carat each; Mr. Bromberg testified that when he received the stones in the course of his business he estimated and made entry of the fact on an envelope in which he deposited the ring, that the largest stone was $35/100$ of a carat and the smaller $23/100$ of a carat each; Mr. Bromley testified that in the course of his employment by defendant he weighed the stones and they were of the weights indicated by Mr. Bromberg on the envelope in evidence. This evidence was such that the jury could base a finding of a total weight of about $81/100$ of a carat. The witnesses agreed that the quality of the stones was what is called the commercially perfect white stone, silver cape, and of the nature or style known as old mine cut stones. There was a difference of opinion among the witnesses as to the value of the stones in the

ring. The burden of proving the extent of her loss, resting under the law upon plaintiff, was sought to be shifted to defendant by her answer to the question indicated above, that the value was between $1,500 and $2,000.

Accepting the burden of going forward with the evidence, defendant introduced as witnesses several jewelers of the city of Birmingham shown to be familiar with old mine cut diamonds as well as other such stones, and their respective judgments of value of diamonds varied somewhat. All agreed that stones of the style known as old mine cut diamonds were not on general sale in that market and were of less value than more modern styles and cuts; that to recut the diamonds in question and make them merchantable and a brilliant product the reduction in weight would be from 25 to 50 per cent. Some witnesses fixed that loss at an average of 40 per cent. All agreed that the only way to make an old mine cut merchantable is to recut it. The defendant's witnesses variously fixed the market value of old mine cut stones under the size of one carat at from $125 to $175 per carat. The quality of the stones in question being that known and called among jewelers as "commercial white or silver cape," a fair construction of a tendency of some of defendant's evidence was that modern cuts of such stones was $700 per carat; and that old mine cut stones would be reduced to the average of about 40 per cent. in weight in changing to modern cut. At this ratio of loss in recutting, the value of plaintiff's stones, on the basis of $700 per carat, if changed to a modern cut, would have been $861, which, with interest to this date, is $1,063.24. The testimony of witnesses Herzog, Bromley, Lynch, and Webb ranged from $375 per carat to $700 on the Birmingham market of modern cut stones, with opinions of reduction in weight of 25 to 50 per cent. from old mine cut to modern cut. The market value of the percentage taken therefrom in recutting is not shown by the evidence.

Appellant's counsel, discussing the motion for a new trial on the grounds that the verdict was grossly excessive, concedes that appellee "was entitled to have the jury assess the value of the three stones of the approximate total weight of two carats (2.05 carats), first quality, commercially perfect and old mine cut." When so considered, the judgment is opposed to the overwhelming weight of the evidence.

Finding no reversible error in the record other than that the ground of the motion for a new trial—"the verdict of the jury was grossly excessive under the evidence"—is established by the overwhelming weight of the evidence, the court is of opinion therefore, and proceeding in the absence of other reversible error, to assess a just and proper

amount of recovery in the cause as required by the act of September 17, 1915. Gen. Acts 1915, p. 610. The court fixes upon the sum of $1,063.24 (the value of the ring with interest), and orders that the judgment in this cause be reversed and remanded, unless plaintiff, within 20 days from the date hereof, remits all damages in excess of said amount, in which event judgment will be affirmed. Alabama Power Co. v. Talmadge (Ala. Sup.) 93 South. 548; [1] Montg. L. & W. P. Co. v. Thombs, 204 Ala. 678, 87 South. 205. The court is of opinion that the costs incurred in the appeal should be paid by appellee, and it is so taxed.

The judgment of the circuit court is reversed conditionally.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.